**PORTO RICO COAL CO., Inc., v. EDWARDS, Collector of Internal Revenue (two cases).**

(District Court, S. D. New York.   August 4, 1921.)

No. L 20–280.

1. **Internal revenue ⬤⟿7—Income derived from Porto Rico not exempt from excess profits tax.**
   The fact that a New York corporation derives its income from business in Porto Rico *held* not to exempt it from the excess profits tax imposed by Act Oct. 3, 1917, § 201 (Comp. St. 1918, § 6336⅜b).

2. **Internal revenue ⬤⟿7—Taxation of state corporation not affected by laws relating to Porto Rico where its business is located.**
   That under Act March 2, 1917, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803ccc), internal revenue laws are not effective in Porto Rico, does not affect the liability of a state corporation for an income tax because it conducts its business in and derives its income from Porto Rico.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Internal revenue $\Longleftrightarrow$2—National and local income taxes do not constitute double taxation.**

The subjection of a state corporation deriving its income from Porto Rico to an income tax for the benefit of the national government and also by Revenue Act 1918, § 261 (Comp. St. Ann. Supp. 1919, § 6336½z), to a similar tax as a foreign corporation for the benefit of Porto Rico, does not constitute a double taxation.

**4. Internal revenue $\Longleftrightarrow$7—State corporation doing business in Porto Rico held subject to income tax.**

A New York corporation doing business in and deriving its income from Porto Rico -held subject to the income and excess profits taxes imposed by Revenue Act 1918, §§ 230 (a), 301 (a) (Comp. St. Ann. Supp. 1919, §§ 6336⅛nn, 6336⁷/₁₆aa).

**5. Internal revenue $\Longleftrightarrow$5—Not entitled to rights of citizens of another jurisdiction.**

A corporation of New York cannot invoke a supposed immunity from federal taxation granted by the Bill of Rights of Porto Rico (Act March 2, 1917, § 2 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803aa]), merely because it derives its income from that island.

**6. Constitutional law $\Longleftrightarrow$286—Internal revenue $\Longleftrightarrow$2—Tax statute not unconstitutional because not applicable to Porto Rico.**

A statute imposing internal revenue taxes is not in violation of the Fifth Amendment to the Constitution, as taking the property of those taxed without due process of law, because it is not made applicable to citizens of Porto Rico.

At Law. Actions by the Porto Rico Coal Company, Inc., against William H. Edwards, Collector of Internal Revenue. On demurrers to complaints. Demurrers sustained.

"These cases involve the validity of taxes levied on the plaintiff for the years 1917 and 1918, and paid under duress in the city of New York, and now sought to be recovered in the first cause of action in action No. 1 and in the only cause of action in action No. 2. The plaintiff, which now seeks to recover them, is a corporation organized under the laws of New York, but deriving all its income, with an insignificant exception, from Porto Rico, and doing all its business, owning all its property, and keeping its books of account in that island. The point raised in each action is whether, under the statutes, such a corporation may be so taxed in New York at the same general rates as though the income were derived from the continental United States, or whether it is liable to be taxed only in Porto Rico. The further point involved is whether, if the statutes so tax it, they are constitutional. For the year 1917 only an excess profits tax is involved; for the year 1918,. not only that tax, but an income tax of 12 per cent.

Francis W. Aymar and R. Floyd Clarke, both of New York City, for plaintiff.

Richard S. Holmes, of New York City, and Ferdinand Tannenbaum, for defendant.

### (a) Excess Profits Tax of 1917.

LEARNED HAND, District Judge (after stating the facts as above). [1] Action No. 1 covers only the excess profits tax levied under title 2 of the Revenue Act of 1917 (Comp. St. 1918, §§ 6336⅜a–6336⅜f). Section 201 of that act levies such a tax "upon the income of every corporation," and section 206(c) (section 6336⅜g) provides how the income shall be ascertained. For the year 1917 it refers back

---

$\Longleftrightarrow$For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to title 1 of the Revenue Act of 1916 (Comp. St. §§ 6336a–6336x), and by that reference incorporates it, except "as amended by this act." Section 10 of the Revenue Act of 1916, which was itself amended by section 1206 of the very Revenue Act of 1917 (Comp. St. 1918, § 6336j), provides, as so amended, that the tax shall be levied upon "the total net income received * * * from all sources by every corporation * * * organized in the United States," and this must be deemed, therefore, the warrant of authority for ascertaining the amount of the excess profits tax. It includes an income derived from Porto Rico.

[2] To meet this the plaintiff argues as follows: By section 9 of the Organic Act of· Porto Rico of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3803ccc) it was provided that all laws should apply to Porto Rico except internal revenue laws. The taxation of the Porto Rican income of a New York corporation under either the Revenue Act of 1917 or of 1918 would violate this section and cannot be justified, unless there be some express provision applying the tax to such income. This is a very condensed statement of the plaintiff's position and may be incorrect. It is mixed up with much irrelevant and incorrect matter, as, for example, that section 9 repealed the Revenue Act of 1916 as to Porto Rico, which it clearly did not, and that the Revenue Act of 1917 did not reinstate it, which it clearly would have done, if it had ever been repealed. But all this is of no moment, because it is conceded by both sides that the excess profits tax never applied to Porto Rico and that is all we have to consider.

The important thing is that the excess profits tax of 1917 has nothing to do with Porto Rico or with its tax system. While it does levy a tax "on" incomes there arising, it levies them against persons living in the United States. In that respect Porto Rico is precisely in the position of Mexico, which could not deem itself prejudiced by a tax levied on the Mexican incomes of citizens of the United States. If the Revenue Act of 1917 or 1918 endeavored to follow the incomes to Porto Rico and to collect them out of the property there, the plaintiff's argument would begin to be relevant, but not till then. The confusion lies in identifying the plaintiff, which is for all purposes a resident of New York, with its income, which happens to arise only in Porto Rico, but which might arise all over the world. The Porto Rican taxes remain as "intact" as ever, however little the plaintiff's income be "intact." By computing the tax on the basis of that income, Porto Rico can be affected only because the plaintiff may withdraw some part of the income which might otherwise remain. It could do that anyway, and the internal revenue laws do not "apply" in Porto Rico, because they make that result possible or even probable.

[3] It is, of course, true that in the case of the tax for 1918 this will result in an apparent double taxation. The plaintiff is taxed on its income in New York, and its income is taxed in Porto Rico under section 261 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛z). As to 1917 I should think this would not occur, because section 23 of the Revenue Act of 1916, without the aid of section 261 of the Revenue Act of 1918, would not, I should suppose, give Porto

Rico the right to reach the income of a nonresident. But the point need not be pressed, because, as I have said, it is clearly true for 1918.

There is no final objection to a set of statutes that they involve double taxation, though the implication is against it; but in the case at bar, in spite of what I have said, there is no such duplication. The taxes levied under section 23 of the Revenue Act of 1916 and section 261 of the Revenue Act of 1918 are for the exclusive benefit of Porto Rico, and for the matter of that Congress probably was acting merely as local sovereign when it passed them. The excess profits taxes of 1917 and 1918 and the income tax proper was for the support of the general government. The situation is therefore no different from the case of the plaintiff, if it had drawn its income from New York, or Massachusetts, or any other state of the Union having an income tax. It would have been subject to two taxes on the same property—one for local, and one for general, purposes. There is nothing illegal in such a local tax, when the taxpayer is a nonresident, Shaffer v. Carter, 252 U. S. 37, 40 Sup. Ct. 221, 64 L. Ed. 445; Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 40 Sup. Ct. 228, 64 L. Ed. 460. While, therefore, I do not mean to imply that the result would be different, even if both taxes had been federal, properly speaking, they were not, and any canon of interpretation derived from that circumstance does not apply.

For the foregoing reasons, I interpret the language of section 10 of the Revenue Act of 1916, "from all sources," as including the Porto Rican income of the plaintiff, and I hold the tax to have been properly levied.

### (b) Excess Profits Tax and Income Tax of 1918.

[4] Action No. 2 includes not only an excess profits tax for 1918, but an income tax of 12 per cent. as well. First, as to the excess profits tax:

Section 301(a) of title 3 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336$^7$/$_{16}$aa) imposes a tax "upon the net income of every corporation." This income for 1918, under section 320 (a) (3), being section 6336$^7$/$_{16}$g, is to be ascertained in the same manner as provided in title 2 of the same act (sections 6336$\frac{1}{2}$a–6336$\frac{1}{2}$z); i. e., the income tax title. Part 3 of that title applies to corporations, and is comprised in sections 230–241. Section 230(a), which levies the income tax on corporations, merely repeats the words "every corporation." We must go, therefore, to sections 232 and 233 to learn what is the income to be taxed, and section 233 refers us back to section 213. That defines "gross income," which alone is here material, as "gains," etc., "derived from any source whatever"—substantially the same phrase as in section 10 of the Revenue Act of 1916. It appears, moreover, from section 233 (though apparently only by inference), that the phrase "every corporation," in section 230, means only domestic corporations, because section 233 is divided into two parts, (a) and (b). Part (a) refers to corporations taxable under section 230, while part (b) provides that—

"In the case of a foreign corporation gross income includes only the gross income from sources within the United States."

From all this reference and cross-reference it appears, just as in the case of the excess profits tax of 1917, that the act levies a tax on New York corporations, no matter from where they get their income. The plaintiff argues here, as in the case of the tax for 1917, that section 9 of the Organic Act of 1917 made section 301(a) inapplicable; but the answer is the same, and need not be repeated.

The income tax is dependent on the same considerations as the excess profits tax. As I have said, there was a Porto Rican income tax, which could be collected from the plaintiff under section 261 of the Revenue Act of 1918, which incorporated title 1 of the Revenue Act of 1916; but for the reasons already given the existence of this tax is no reason to relieve the plaintiff from its income tax as a resident of New York. Indeed, I may add that, though I should regard it as irrelevant if the case were otherwise, the record does not disclose that any of the plaintiff's stockholders are citizens of Porto Rico or not citizens of New York.

I· conclude that both the excess profits and income taxes for 1918 were correctly levied and paid.

### (c) Constitutionality.

[5] There is a final argument, based upon the supposition that the statutes, if so construed, violate the Porto Rico Bill of Rights (section 2 of the Organic Act of 1917), which, when once granted, forever limits the legislative action of Congress. The doctrine is a new one, and without authority to support it, that such a Bill of Rights becomes a constitutional limitation. It might be more plausibly stated by saying that the Organic Act extended to Porto Rico the Constitution of the United States, that such an extension could not be revoked, and that the legislation in question was within some of the limitations of that document.

Assuming all the premises, I cannot see that the plaintiff can complain. It has no standing as a Porto Rican to invoke the Porto Rican Bill of Rights. Apparently it assumes that it gets such a status by drawing its income from Porto Rico; but that is the same fallacy which pervaded its argument as to interpretation. It is a resident of New York, and for purposes of the taxation of its income it is quite indifferent from where that income derives. If it wishes to speak with the mouth of a Porto Rican, let it put on the proper mask; it cannot take on a new personality with every territory from which it draws its profit. To choose a state for incorporation is to make that state its parent, not only for the advantages it may grant, but for the limitations it may impose.

[6] The only ground for complaint that I can see is that Porto Rico has been exempted from these taxes, while the plaintiff, who draws its income from Porto Rico, has not. While I cannot be sure that this is the objection argued, I shall answer it against the chance that it may be. Clearly the taxes are not excises. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 573, 574, 15 Sup. Ct. 673, 39 L. Ed. 759; Id., 158 U. S. 601, 637, 15 Sup. Ct. 912, 39 L. Ed. 1108. I do not understand

the language in La Belle Iron Works v. U. S., 256 U. S. ——, 41 Sup. Ct. 528, 65 L. Ed. ——, decided May 16, 1921, as meaning to overrule that case, although it must be owned that, taken literally, some of it seems to countenance the notion that income taxes are within section 8 of article 1. If Pollock v. Farmers' Loan & Trust Co., supra, is still law, as I understand, on no conceivable theory can these taxes fall within section 8 of article 1 of the Constitution.

As direct taxes the discrimination might be thought to be within the Fifth Amendment. The Supreme Court considered the income tax in Brushaber v. Union Pac. Co., 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414, in respect of its exemptions and discriminatory rates, and held it broadly valid. La Belle Iron Works v. U. S. went to even greater lengths in permitting inequality in the assessment of such taxes. These decisions might possibly cover the exemption of a whole district of the United States, though the language in the second may perhaps be a caution against going so far. But in the case at bar the exemption is of a territory having no share in the government of the United States; it is granted by Congress, acting for all the states at their common expense. Obviously, there can be no taking without due process of law in such legislation. That phrase implies some oppression, and the joint action of all the states relieving a territory which has no share in the decision cannot result in oppression. It is a self-denying ordinance, and while its wisdom may or may not be conceded, it cannot be within the Fifth Amendment, which is only designed to protect one class or district from exploitation by others.

Demurrers sustained; judgments dismissing the complaint upon the merits in action No. 2 and in the first cause of action in action No. 1.