## UNTERMYER, EXECUTRIX, ET AL. *v.* ANDERSON, COLLECTOR.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 221.   Argued February 27, 1928.—Decided April 9, 1928.

1. The gift tax provisions of the Revenue Act, approved June 2, 1924 (see *Blodgett* v. *Holden*, 275 U. S. 142), must be construed as applying to gifts made at any time during that calendar year. P. 445.
2. So far as applicable to bona fide gifts not made in anticipation of death, and fully consummated prior to June 2, 1924, those provisions are arbitrary and invalid under the Due Process Clause of the Fifth Amendment. *Id.*
3. The mere fact that a gift was made while the bill containing the questioned provisions was in the last stage of progress through Congress is not enough to differentiate this cause from the former one and to relieve the legislation of its arbitrary character. P. 445.

18 F. (2d) 1023, reversed.

CERTIORARI, 274 U. S. 730, to a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court in favor of the Collector, in an action against him to recover an amount collected as a gift tax.

*Mr. Louis Marshall* for petitioners.

A gift made during the calendar year 1924 and prior to June 2, 1924, when the Act of 1924 became law, was not made taxable by that Act; but if intended that it should be, the Act, in so far as it related to a gift so made, was void because in violation of the Fifth Amendment. *Blodgett* v. *Holden,* 275 U. S. 142; *Anderson* v. *McNeir,* 16 F. (2d) 970; *Shwab* v. *Doyle,* 258 U. S. 529; *Union Trust Co.* v. *Wardell,* 258 U. S. 537; *Levy* v. *Wardell,* 258 U. S. 542; *Knox* v. *McElligott,* 258 U. S. 546; *Reynolds* v. *McArthur,* 2 Pet. 417; *United States* v. *Field,* 255 U. S. 257; *Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602; *Llewellyn* v. *Frick,* 268 U. S. 238; *Nichols* v. *Coolidge,* 274 U. S. 531.

The tax violates the Fifth Amendment in that it deprives the donor of his property without due process of law. *Wynehamer* v. *People,* 13 N. Y. 396; *Sherman* v. *Elder,* 24 N. Y. 381; *Chicago etc. R. R. Co.* v. *Englewood Ry. Co.,* 115 Ill. 375; *Jaynes* v. *Omaha Street Ry. Co.,* 53 Neb. 631; *Smith* v. *Campbell,* 10 N. C. 595; *Eaton* v. *B. C. & M. R. R.,* 51 N. H. 504; *Buchanan* v. *Warley,* 245 U. S. 60.

The rules which appertain to a testamentary disposition of property, or to a right of inheritance, or to a so-called estate tax, have no relation to a gift *inter vivos* not made in contemplation of death. *Knowlton* v. *Moore,* 178 U. S. 41; *Magoun* v. *Illinois Savings & Trust Co.,* 170 U. S. 281; *Blackstone* v. *Miller,* 188 U. S. 200.

Section 319 is in no manner based upon the theory that the gift tax is imposed for the purpose of preventing the donor from evading the estate tax imposed by the Revenue Act of 1924, or by any predecessor acts based upon that theory.

If the gift was made in contemplation of death, the subject-matter, under the conditions specified in § 302 (c), (d), would be treated as a part of the estate of the

decedent, and, thus, taxable. The tax upon a gift *inter vivos* and not in contemplation of death may not come within the scope of these provisions. *Schlesinger* v. *Wisconsin,* 270 U. S. 230.

The gift tax is not payable by the donee, but by the donor, and is, therefore, clearly not a succession, estate or inheritance tax or a death duty, but a tax upon the exercise of the constitutional right of the donor to give away his property.

Nor is this tax similar to a stamp tax imposed upon the transfer of shares in a corporation. The latter is a creature of government. The transfer of its shares is necessarily made with the sanction of government. Hence the imposition of a stamp duty is based upon the idea that a privilege is conferred upon the transferror. *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431, aff'd 204 U. S. 152; *Thomas* v. *United States,* 192 U. S. 363.

Nor can it be sustained as a tax within the rule laid down in *Nicol* v. *Ames,* 173 U. S. 509, which related to a tax imposed upon the sale of property pursuant to transactions at an exchange or board of trade.

The tax imposed is a direct tax and void because not apportioned as required by Article I, § 2, Clause 3, of the Constitution.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Robert P. Reeder,* Special Assistant to the Attorney General, were on the brief, for respondent.

The case of *Blodgett* v. *Holden* did not decide that the gift tax provisions of the Revenue Act of 1924 were not retroactive, or that its application to all gifts made prior to June 2, 1924, was unconstitutional.

To tax the gift here involved is not to make the law so arbitrary as to be unconstitutional. The provision had been under discussion in Congress for three months, had

been passed by both Houses, had been sent to conference, and the conference had reported the bill containing the provisions. It was not until then that Mr. Untermyer made the gift. It is not an unfair inference that he had knowledge of these facts and that it was his intention to avoid the tax, if possible, before the bill should become law by the approval of the President. He had an undoubted right to seek to avoid payment of the tax by making the gift before the Act took effect. The only question is, was it arbitrary and capricious and confiscatory to tax a gift thus made? It would not be so regarded in England. Halsbury's Laws of England, Vol. 27, p. 182, § 352; *Hume* v. *Haig,* (1799) 8 Bro. Parl. Cas. 196; Provisional Collection of Taxes Act, 1913 (3 Geo. 5, c. 3). See also Vol. 24, p. 537, Halsbury's Laws of England.

This case is not like that of *Nichols* v. *Coolidge,* 274 U. S. 531. There the Act of Congress reached back and dealt with a transfer which took place a dozen years before the law was passed and attributed to the property its value long after the transfer.

Neither federal nor state legislation is unconstitutional because it is retroactive. *Calder* v. *Bull,* 3 Dall. 386; *The Peggy,* 1 Cranch, 103; *Prize Cases,* 2 Black 635; *Johannessen* v. *United States,* 225 U. S. 227; *Satterlee* v. *Matthewson,* 2 Pet. 380; *Curtis* v. *Whitney,* 13 Wall. 68; *Kentucky Union Co.* v. *Kentucky,* 219 U. S. 140.

This Court has sustained state tax laws which were retroactive in scope. *Carpenter* v. *Pennsylvania,* 17 How. 456; *Orr* v. *Gilman,* 183 U. S. 278; *Locke* v. *New Orleans,* 4 Wall. 172; *Seattle* v. *Kelleher,* 195 U. S. 351; *State* v. *Bell,* 61 N. C. 76.

It has sustained similar federal taxes. *Stockdale* v. *Insurance Companies,* 20 Wall. 323, followed in *Railroad Co.* v. *Rose,* 95 U. S. 78. See *Billings* v. *United States,* 232 U. S. 261; *Brushaber* v. *Union Pacific R. R. Co.;* 240

U. S. 1; *Railroad Co.* v. *Collector,* 100 U. S. 595; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107; *Hecht* v. *Malley,* 265 U. S. 144.

A tax upon transfers of property by gift is not a direct tax, but an excise. Apparently the only legal equivalent of a tax on the general ownership of property is a tax on the income from such property.

*Mr. Ira Jewell Williams* filed a brief as *amicus curiae* by special leave of Court.

Mr. Justice McReynolds delivered the opinion of the Court.

By the original action commenced in the United States District Court, Southern District of New York, Isaac Untermyer sought to recover of the U. S. Collector of Internal Revenue the tax exacted of him, under the Act of June 2, 1924,—§§ 319, *et seq.,*—on account of a gift which he made May 23, 1924. After his death the cause was revived in the name of the executors—petitioners herein—and was then heard upon an agreed statement of facts. Both sides moved for a directed verdict. Judgment went for the Collector and was affirmed by the Circuit Court of Appeals.

The questions now presented for consideration are similar to those involved in *Blodgett* v. *Holden,* 275 U. S. 142.

The two causes differ in this: Blodgett's gifts were made during January, 1924, before the provisions for taxing such transfers were presented for the consideration of Congress; Untermyer made his gift May 23, 1924, some three months after those provisions were first presented and while the conference report upon the bill was pending. This report went to the Senate May 22, 1924, and three days thereafter the bill had finally passed

both houses. The President approved it on June 2, 1924.

Unless the difference in circumstances stated is material, the same rule of law must govern both cases.

Two opinions were announced in *Blodgett* v. *Holden.* The one prepared by the present writer, expressed the views of four of the eight Justices who participated in the consideration of the cause. After quoting the pertinent provisions of the statute, etc., the opinion declared: " So far as the Revenue Act of 1924 undertakes to impose a tax because of the gifts made during January, 1924, it is arbitrary and invalid under the due process clause of the Fifth Amendment." We need not now further repeat what was there set out.

In the light of arguments advanced by counsel in the present cause, the matter has been considered by all members of the Court, and a majority of them are of opinion that the gift tax provisions of the Act of 1924 here challenged must be construed as applicable to gifts made during the entire calendar year 1924. And, further, that so far as applicable to bona fide gifts not made in anticipation of death and fully consummated prior to June 2, 1924, those provisions are arbitrary and invalid under the due process clause of the Fifth Amendment.

The mere fact that a gift was made while the bill containing the questioned provisions was in the last stage of progress through Congress we think is not enough to differentiate this cause from the former one and to relieve the legislation of the arbitrary character there ascribed to it. To accept the contrary view would produce insuperable difficulties touching interpretation and practical application of the statute, and render impossible proper understanding of the burden intended to be imposed. The taxpayer may justly demand to know when and how he becomes liable for taxes—he cannot foresee and

ought not to be required to guess the outcome of pending measures. The future of every bill while before Congress is necessarily uncertain. The will of the lawmakers is not definitely expressed until final action thereon has been taken.

The judgment below must be reversed.

*Reversed.*

Mr. Justice Sanford concurs in the result.

Mr. Justice Holmes, dissenting.

As I think the construction of the Act of June 2, 1924, c. 234, § 319, adopted by four of us in *Blodgett* v. *Holden,* 275 U. S. 142, the proper one, I shall not go into the question of constitutionality beyond saying that I find it hard to state to myself articulately the ground for denying the power of Congress to lay the tax. We all know that we shall get a tax bill every year. I suppose that the taxing act may be passed in the middle as lawfully as at the beginning of the year. A tax may be levied for past privileges and protection as well as for those to come. *Wagner* v. *Baltimore,* 239 U. S. 207, 216. *Billings* v. *United States,* 232 U. S. 261, 282. *Seattle* v. *Kelleher,* 195 U. S. 351. *Stockdale* v. *Atlantic Insurance Co.,* 20 Wall. 323. I do not imagine that the authority of Congress to tax the exercise of the legal power to make a gift will be doubted any more than its authority to tax a sale. Apart from its bearing upon construction and constitutionality I am not at liberty to consider the justice of the Act.

Mr. Justice Brandeis and Mr. Justice Stone agree with this opinion.

Mr. Justice Brandeis, with whom Mr. Justice Holmes and Mr. Justice Stone concur.

To what Mr. Justice Holmes has said, I add this. The Court construes the Act as applying to all gifts made

during the calendar year. Then it holds the Act void as applied to a gift made during the ten-day period between the submission of the Conference Report to Congress and the approval of the Act by the President. It holds the Act void because the action of the law-making body is, in its opinion, unreasonable. Tested by the standard of reasonableness commonly adopted by man—use and wont—that action appears to be reasonable. Tested by a still higher standard to which all Americans must bow— long continued practice of Congress repeatedly sanctioned by this Court after full argument—its validity would have seemed unquestionable, but for views recently expressed. No other standard has been suggested.

For more than half a century, it has been settled that a law of Congress imposing a tax may be retroactive in its operation. *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331; *Railroad Co.* v. *Rose,* 95 U. S. 78, 80; *Railroad Co.* v. *United States,* 101 U. S. 543, 549; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107; *Billings* v. *United States,* 232 U. S. 261, 282; *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1, 20; *Lynch* v. *Hornby,* 247 U. S. 339, 343; *Hecht* v. *Malley,* 265 U. S. 144, 164. Each of the fifteen income tax acts adopted from time to time during the last sixty-seven years has been retroactive, in that it applied to income earned, prior to the passage of the act, during the calendar year.[1] The Act of October

---

[1] The Act of August 5, 1861, c. 45, 12 Stat. 292, 309, applied to all incomes for the calendar year next preceding January 1, 1862. The Act of July 1, 1862, c. 119, 12 Stat. 432, 473, enacted higher rates, applicable to incomes for the year ending December 31, 1862. The Joint Resolution of July 4, 1864, No. 77, 13 Stat. 417, imposed an additional tax of 5% on incomes for 1863 which had already been taxed at the rates established by the Act of 1862. The Act of June 30, 1864, c. 173, 13 Stat. 223, 281, applied to incomes for the then current calendar year. The Act of March 3, 1865, c. 78, 13 Stat. 469, 479, which again raised the rates, applied to income for the year end-

3, 1913, c. 16, 38 Stat. 114, 166, which taxed all incomes received after March 1, 1913, was specifically upheld in *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1, 20, and in *Lynch* v. *Hornby,* 247 U. S. 339, 343. Some of the acts have taxed income earned in an earlier year. The Joint Resolution of July 4, 1864, No. 77, 13 Stat. 417, imposed an additional tax on incomes earned during the calendar year 1863, this additional tax being imposed after the taxes for the year had been paid. In *Stockdale* v. *Insurance Companies,* 20 Wall. 323, 331, Mr. Justice Miller said: " No one doubted the validity of the tax or attempted to resist it." The Act of February 24, 1919, c. 18, Title II, 40 Stat. 1057, 1058–1088, which taxed incomes for the calendar year 1918, was applied, without question as to its constitutionality, in *United States* v. *Robbins,* 269 U. S. 315, and numerous other cases.

The Corporation Tax Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112, applying to all net income for the calendar year, was sustained in *Flint* v. *Stone Tracy Co.,* 220

ing December 31, 1865. The Act of March 2, 1867, c. 169, 14 Stat. 471, 477, also applied to income for the current calendar year. The Act of July 14, 1870, c. 255, 16 Stat. 256, 257, taxed incomes for the year commencing January 1, 1870, though the Acts of June 30, 1864, c. 173, 13 Stat. 223, 283, of July 13, 1866, c. 184, 14 Stat. 98, 138, and of March 2, 1867, c. 169, 14 Stat. 471, 480, had provided that income arising after January 1, 1870, was to be free from tax. The Act of August 27, 1894, c. 349, 28 Stat. 509, 553, applied to incomes in the calendar year ending December 31, 1894. The Act of October 3, 1913, c. 16, 38 Stat. 114, 166, applied to incomes received subsequent to March 1, 1913. The Act of September 8, 1916, c. 463, 39 Stat. 756, applied to all income of that year. The increased rates established by the Act of October 3, 1917, c. 63, 40 Stat. 300, applied to incomes received during the calendar year commencing January 1, 1917. The Revenue Act of 1918, February 24, 1919, c. 18, 40 Stat. 1057, 1058, applied to incomes for the year 1918. Later Revenue Acts have been similarly retroactive with respect to the income tax: Act of November 23, 1921, c. 136, 42 Stat. 227; Act of June 2, 1924, c. 234, 43 Stat. 253, 254; Act of February 26, 1926, c. 27, 44 Stat. 9, 10.

U. S. 107. The Acts of March 3, 1917, c. 159, 39 Stat. 1000, and of October 3, 1917, c. 63, 40 Stat. 300, 302, imposing excess profits taxes on the profits earned during the calendar year, were so applied in *LaBelle Iron Works* v. *United States,* 256 U. S. 377, in *Greenport Basin & Construction Co.* v. *United States,* 260 U. S. 512, and in other cases. The validity of the Act of February 24, 1919, c. 18, Title III, 40 Stat. 1057, 1088, taxing excess profits earned during the calendar year 1918, has never been questioned. Compare *Willcuts* v. *Milton Dairy Co.,* 275 U. S. 215; *Blair* v. *Oesterlein Machinery Co.,* 275 U. S. 220; *Porto Rico Coal Co.* v. *Edwards,* 275 Fed. 104; *National Paper & Type Co.* v. *Edwards,* 292 Fed. 633. The Munition Manufacturer's Tax, imposed by the Act of September 8, 1916, c. 463, Title III, 39 Stat. 756, 780, applied to the twelve months ending December 31, 1916. Compare *Carbon Steel Co.* v. *Lewellyn,* 251 U. S. 501; *United States* v. *Anderson,* 269 U. S. 422, 435. The Act of February 24, 1919, c. 18, 40 Stat. 1057, 1126, which materially increased the capital stock tax, made the increase retroactive to July 1, 1918. In *Hecht* v. *Malley,* 265 U. S. 144, 164, these retroactive provisions were held to validate taxes erroneously assessed under an earlier act and paid before the passage of the Act of 1919.

Except for the peculiar tax involved in *Nichols* v. *Coolidge,* 274 U. S. 531, no federal revenue measure has ever been held invalid on the score of retroactivity. The need of the Government for revenue has hitherto been deemed a sufficient justification for making a tax measure retroactive whenever the imposition seemed consonant with justice and the conditions were not such as would ordinarily involve hardship. On this broad ground rest the cases in which a special assessment upon real estate has been upheld although the benefit resulting from the improvement had been enjoyed and the cost thereof had been paid prior to any legislation attempting to authorize

318°—28——29

the assessment, *Wagner* v. *Baltimore,* 239 U. S. 207; also the cases in which special assessments upon real estate have been upheld although the benefit had been conferred and the cost thereof had been paid before there was a valid authorization either of the improvement or of the assessment. Compare *Charlotte Harbor & Northern Ry. Co.* v. *Welles,* 260 U. S. 8. Such retroactive legislation has been sustained, although the validating statute was not enacted until after the property benefited had passed to a bona fide purchaser without notice of any claim that it had been, or might be, assessed for a benefit. *Seattle* v. *Kelleher,* 195 U. S. 351. Compare *Citizens National Bank* v. *Kentucky,* 217 U. S. 443, 454. The right of the Philippine Government to retain import and export duties laid and collected without authority, was sustained where thereafter Congress by retroactive legislation confirmed the unlawful action in collecting the duties. *United States* v. *Heinszen & Co.,* 206 U. S. 370; *Rafferty* v. *Smith, Bell & Co.,* 257 U. S. 226. Liability for taxes under retroactive legislation has been " one of the notorious incidents of social life." *Seattle* v. *Kelleher,* 195 U. S. 351, 360. Recently this Court recognized broadly that " a tax may be imposed in respect of past benefits." *Forbes Boat Line* v. *Board of Commissioners,* 258 U. S. 338, 339.

The Act with which we are here concerned had, however, a special justification for retroactive features. The gift tax was imposed largely to prevent evasion of the estate tax by gifts inter vivos, and evasion of the income tax by the splitting up of fortunes and the consequent diminution of surtaxes. If, as is thought by the Court, Congress intended the gift tax to apply to all gifts during the calendar year, its purpose may well have been to prevent evasion of the gift tax itself, by the making of gifts after its introduction and prior to its passage. Is Congress powerless to prevent such evasion by the vigilant

and ingenious? This Court has often recognized that a measure may be valid as a necessary adjunct to a matter that lies within legislative power, even though, standing alone, its constitutionality might have been subject to doubt. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192; *Ruppert* v. *Caffey,* 251 U. S. 264, 289; *Everard's Breweries* v. *Day,* 265 U. S. 545, 560. If the legislature may prohibit the sale of confessedly innocent articles in order to insure the effective prohibition of others, I see no reason why it may not spread a tax over a period in advance of its enactment sufficiently long to insure that the tax will not be evaded by anticipating the passage of the act. Compare *United States* v. *Doremus,* 249 U. S. 86, 94. In taxation, as well as in other matters, "the law allows a penumbra to be embraced that goes beyond the outline of its object in order that the object may be secured." See Mr. Justice Holmes, in *Schlesinger* v. *Wisconsin,* 270 U. S. 230, 241. Under the rule now applied, even a measure framed to prevent evasion of a tax from a date when it is practically certain that the act will become law, is deemed unreasonable and arbitrary.

The problem of preventing loss of revenue by transactions intervening between the date when legislation is introduced and its final enactment, is not a new one; nor is it one peculiar to the gift tax. Other nations have met it by a method similar to that which the Court holds to be denied to Congress. England long ago adopted the practice of making customs and excise duties retroactive to the beginning of the fiscal year or to the date when the government's resolutions were agreed to by the House of Commons sitting as a Committee of Ways and Means.[2]

---

[2] The practice applies not only to tariff and excise measures, but to all kinds of impositions. For examples of the practice, compare: (a) as to tariffs and excises, Acts of May 25, 1855, 18 & 19 Vict., cc. 21, 22, retroactive to dates in April, 1855; Act of July 31, 1894, 57 & 58 Vict., c. 30, §§ 26–29, retroactive to April 17, 1894; Act of April

A similar practice prevails in Ireland,[3] in all the self-governing Dominions,[4] and to some extent in France and Italy.[5] In the United States, retroactive operation of the tariff has been repeatedly recommended by the Tariff Commission and by the Secretary of Commerce.[6] Legislation to that end was reported by the Committee on Ways and Means of the House of Representatives.[7] No suggestion seems to have been made that such legislation would by its retroactive feature violate the due process clause.[8]

---

29, 1910, 10 Edw. 7, c. 8, §§ 81, 82, 84, retroactive to April 30, 1909; Act of December 23, 1915, 5 & 6 Geo. 5, c. 89, §§ 1–12, retroactive to dates in September, 1915; Act of July 29, 1927, 17 & 18 Geo. 5, c. 10, retroactive to April 12, 1927; (b) as to income tax, Act of June 22, 1842, 5 & 6 Vict., c. 35, retroactive to April 5, 1842; Acts of May 12 and June 16, 1854, 17 & 18 Vict., cc. 10, 24, retroactive to April 6, 1854; Act of May 25, 1855, 18 & 19 Vict., c. 20, retroactive to April 5, 1855; Act of July 31, 1894, 57 & 58 Vict., c. 30, § 33, retroactive to April 6, 1894; Act of April 29, 1910, 10 Edw. 7, c. 8, §§ 65–66, retroactive to April 6, 1909; Act of July 29, 1915, 5 & 6 Geo. 5, c. 62, § 10, retroactive to April 6, 1915; Act of December 23, 1915, 5 & 6 Geo. 5, c. 89, § 20, raising by 40% the rates for the last six months of the current income tax year; (c) as to inheritance tax, Act of April 29, 1910, 10 Edw. 7, c. 8, § 54, retroactive to April 30, 1909. The proposed taxes are provisionally collected from the date of the resolution of the House of Commons. As to customs and excises this is said to have rested on ancient usage. Highmore, The Customs Laws, 3d ed., 61; May, Parliamentary Practice, 11th ed., 589. In *Bowles* v. *Bank of England*, [1913] 1 Ch. 57, it was held that until the passage of the Finance Act a tax-payer was under no legal obligation to pay the sum provisionally assessed as income tax by the Treasury. By the Provisional Collection of Taxes Act, 3 Geo. 5, c. 3, a resolution of the Committee on Ways and Means of the House of Commons relative to the imposition of any tax and declaring it to be in the public interest that the resolution should have statutory effect, is given the same force as an act of Parliament, provisional on the final enactment of the tax.

[3] See, *e. g.*, Act of May 21, 1927, retroactive to April 22, 1927.

[4] See (a) as to Canada, Act of July 19, 1924, retroactive to April 11, 1924; (b) as to Newfoundland, Act of June 9, 1926, retroactive to

For nearly a century after the adoption of the Constitution, this Court approached with great reluctance the exercise of its high prerogative of declaring invalid an act of Congress. In *Ogden* v. *Saunders,* 12 Wheat. 213, 270, it said with respect to a state statute: " It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body, by which any law is passed, to presume in favour of its validity, until its violation of the constitution is proved beyond all reasonable doubt." In the *Sinking Fund Cases,* 99 U. S. 700, 718, this Court

May 19, 1926; (c) as to Australia, amendment to the tariff effective provisionally on November 25, 1927, and not yet finally approved; (d) as to New Zealand, Act of October 25, 1927, giving the force of law to all resolutions purporting to impose customs duties passed by the House of Representatives on or after September 13, 1927; (e) as to the Union of South Africa, motion of the Minister of Finance, April 5, 1926, " that, subject to an Act to be passed during the present session of Parliament, and to such rebates or remissions of duty as may be provided for therein, the customs duties on the articles as set forth in the accompanying Schedule be increased to the extent shown therein." This motion was embodied in Act No. 34, published in the Union Gazette Extraordinary of June 9, 1926.

[5] See Journal Officiel, December 31, 1926, p. 13,749; Interim Legislation, a Report by the Tariff Commission, pp. 34–36.

[6] See Interim Legislation, a Report submitted by the Tariff Commission to the Chairman of the Committee on Ways and Means of the House of Representatives, April 16, 1917. The recommendation has been repeated in the Annual Reports of the Commission: First Annual Report, 1917, p. 5; Third Annual Report, 1919, p. 7; Fourth Annual Report, 1920, p. 6; Sixth Annual Report, 1922, p. 8. The Secretary of Commerce made a similar recommendation in a letter of May 10, 1921, to the Chairman of the Ways and Means Committee. House Report, 67th Cong., 1st Sess., No. 86, p. 5.

[7] H. J. Res., 67th Cong., 1st Sess., No. 124, 61 Cong. Rec. 1590, 1592, 1618; House Report, 67th Cong., 1st Sess., No. 86.

[8] On May 31, 1921, a member of the Ways and Means Committee filed a minority statement in which he objected to the proposed legislation on the ground that it amounted to a delegation of legislative power to a committee of the House of Representatives. 61 Cong. Rec. 1927.

said with respect to an act of Congress: "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." The presumption in favor of the validity of an act of Congress, often adverted to, has been acted upon as recently as *The Assigned Car Cases,* 274 U. S. 564; and *Hampton, Jr., & Co.* v. *United States, ante,* p. 394. The presumption should be particularly strong where, as here, the objection to an act arises not from a specific limitation or prohibition on Congressional power but only out of the "vague contours of the Fifth Amendment, prohibiting the depriving any person of liberty or property without due process of law," MR. JUSTICE HOLMES, in *Adkins* v. *Children's Hospital,* 261 U. S. 525, 568. I find no reason for thinking that the presumption has been overcome.