## FESLER v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 4235.

Circuit Court of Appeals, Seventh Circuit.
Feb. 25, 1930.

*Certiorari denied 50 S. Ct. 409, 74 L. Ed. —.

Thomas L. Marshall and Joseph McCormack, both of Chicago, Ill., for petitioner.

J. H. McEvers, of Washington, D. C., for respondent.

Before EVANS,. PAGE, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from the decision of the United States Board of Tax Appeals upon redetermination ordering that there is a deficiency for 1923 of $61,401.86 due from the petitioner.

Douglas F. Fesler, on January 9, 1923, exchanged 4,500 shares of common stock of the Bassick Manufacturing Company, which cost $52,000, for $50,000 cash, 200 shares of stock of the Central Trust Company of Illinois, and bonds of the par value of $621,500.

The deficiency was determined by respondent upon the basis that the securities received by petitioner had a readily realizable market value within the meaning of section 202 (c) of the Revenue Act of 1921 (42 Stat. 230), and he placed this market value at $581,375. It is admitted that the cash and the stock in the Central Trust Company of Illinois had readily realizable market values. This controversy, therefore, relates to the remainder of the securities received by petitioner.

The question presented arises over petitioner's income tax return for 1923, and involves subdivisions (a), (c), (c) (1), and (e) of section 202 of the Revenue Act of 1921 (42 Stat. 230), and also amended paragraph (1) subdivision (c), and subdivision (e) of section 202 of that act, approved March 4, 1923 (42 Stat. 1560). In substance they are as follows:

(a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, * * * acquired after February 28, 1913, shall be the cost of such property; except that— * * *

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

(1) When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale), is exchanged for property of a like kind or use. * * *

(e) * * * but when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the money or the fair market value of such other property received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis, shall be taxable to the extent of the excess.

Amended (c) (1). When any such property held for investment, or for productive use in trade or business (not including stock-in-trade or other property held primarily for sale, and in the case of property held for investment not including stock, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities, or evidences of indebtedness or interest), is exchanged for property of a like kind or use.

Subdivision (e) of section 202 of the Revenue Act of 1921 is amended, to take effect January 1, 1923 (42 Stat. 1560) to read as follows:

(e) Where property is exchanged for other property which has no readily realizable market value, together with money or other property which has a readily realizable market value, then the money or the fair market value of the property having such readily realizable market value received in exchange shall be applied against and reduce the basis, provided in this section, of the property exchanged, and if in excess of such basis shall be taxable to the extent of the excess; but

when property is exchanged for property specified in paragraphs (1), (2), and (3) of subdivision (c) as received in exchange, together with money or other property of a readily realizable market value other than that specified in such paragraphs, the amount of the gain resulting from such exchange shall be computed in accordance with subdivisions (a) and (b) of this section, but in no such case shall the taxable gain exceed the amount of the money and the fair market value of such other property received in exchange.

It will be noted that the act of March 4, 1923, effective as of January 1, 1923, completely removed both stocks and bonds from the operation of section 202 (c) (1) of the Revenue Act of 1921.

Petitioner contends that the Act of 1923 violates the Fifth Amendment to the Federal Constitution, in that it is retroactive as to all transactions prior to March 4, 1923, and since December 31, 1922, and thus deprives him of his property without due process of law. Consequently, he insists that the exchange of property of January 9, 1923, is governed by the act of 1921, and that under this Act he is not liable for the deficiency tax assessed against him; and he assigns two reasons for his conclusion: (1) That the property in question, which he received in exchange, had no readily realizable market value; (2) that it was of a like kind or use as the property which he exchanged.

■ In a suit to recover taxes alleged to have been illegally collected the finding of the commissioner is prima facie correct, and the burden of proving the illegality rests upon the taxpayer. Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. Petitioner admits and assumes this burden, and claims that the evidence conclusively supports his contention. He further insists that, regardless of the burden of proof, there must be in the record some evidence to prove that the securities had a readily realizable market value, in the amounts found by the board, in order to sustain the decision. This seems to us to place petitioner in an inconsistent position, for if the finding of the commissioner be prima facie correct, and if the burden rests upon petitioner to prove that the securities had no readily realizable market value, then there would be no burden upon respondent to prove

anything until petitioner had furnished evidence to the contrary.

■ It is hardly fair to say that there was no evidence before the board except that submitted by petitioner. The securities themselves were before the board, and they at least import value. The contract for the exchange of the securities was also in evidence, whereby it was mutually agreed between petitioner and Central Securities Company and Central Trust Company of Illinois that petitioner should not place any of these securities upon the market within six months, for fear that it would depress the market for the remainder of such issues which the companies still held. This is rather persuasive of the fact that the securities had some market value on January 9, 1923. It at least shows what petitioner and the companies thought about the matter of market value at that time. The market quotations for some of the securities were in evidence, and although they were meager, yet they are to be considered where applicable.

These facts, we think, are sufficient to support the finding of the board unless the evidence introduced by petitioner overcomes it.

The only evidence introduced by petitioner was that of the witness Peck, who testified as to each security in question, and who very frankly stated that he did not think a chance of selling a bond in one day would really be the test of readily realizable market value. In this we think he is correct, for the word "readily" is a relative term and means "easily or promptly." But later in his testimony he uses the following language: "My interpretation of 'readily converted' is immediate cash market for a bond, and if a bond has not an immediate cash market I don't think it has a readily realizable market." It is very evident from his testimony that the latter statement constitutes the foundation upon which he bases his conclusions.

It is interesting to note Mr. Peck's testimony concerning these nineteen securities. A close analysis reveals the fact that as to fourteen of these securities he has given very little, if any, evidence on the vital point in issue. He places no value whatever on them; nor does he deny that they have a market value. He merely states that on the 9th day of January, 1923, or for several, or a number of, days thereafter, these fourteen securities could not have been readily converted into cash, or its equivalent, substantially equal to their fair value; and he is

unable to state the number of days it would have required. Whether they could have been converted into cash, or its equivalent, substantially equal to their fair value, is beside the question. So far as his testimony is concerned the fourteen securities referred to might have had a fair valuation of more than par. He does not enlighten us on this subject. It may be easily inferred from his testimony that they did have some readily realizable market value, and the amount of this is really the vital question in the case. Having given us no evidence from which this fact can be determined, petitioner is in no position to question the commissioner's findings in this particular. The witness states, however, that five of the fourteen securities referred to had no active market at the time of the exchange, and he interprets "active market" to mean immediate cash market. We are not willing to place such a narrow and arbitrary construction as does this witness upon the words "readily realizable market value." The word "readily" does not mean immediately, but easily or promptly. It is a relative and not an absolute term, and must be interpreted by the circumstances which are related to the transactions in question. If the lawmakers had thought otherwise they would no doubt have used the words "cash market value." Many of these securities were in large amounts, and witness Peck stated that a small amount could have been then sold at a price equal to their fair value, but that several, or a number of, days must then elapse before another block of the same securities could be sold at their fair value. But even so, considering the number of shares held by petitioner, we think they had a readily or easily realizable market value within the meaning of the statute.

To five of these securities witness Peck gives valuations, and they are practically the same as those given by the commissioner. In our opinion petitioner has not discredited the finding that the securities in question had a readily realizable market value on January 9, 1923, in the amounts as charged.

■ That the property exchanged by petitioner was of like kind or use as that received by him, can avail petitioner only in case the act of 1923 is unconstitutional. In support of this contention petitioner cites the cases of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206; Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L.

Ed. 645; Frew v. Bowers (C. C. A.) 12 F. (2d) 625. These cases involve either gifts or decedents' estates, and unquestionably hold that the law relative to these subjects (which is not the act of 1923), in so far as it is retroactive, is violative of the due process clause of the Federal Constitution. The instant case involves income tax. Section 202 of the Revenue Act of 1921 imposes no tax; it sets forth merely the basis for determining gain or loss from a sale or other disposition of property acquired on or after February 28, 1913. The act of March 4, 1923, imposes no tax. The section of the act of 1921 which imposed the tax was not amended. It will be noted, however, that under subdivision (c) (1) of the act of 1921 no gain or loss was to be recognized in the exchange of property held for investment or for productive use in trade or business, where the exchange was for property for a like kind or use. This constitutes merely an exception to subdivision (a) of the same section, which provides that the basis for calculating the gain or loss resulting from a sale or other disposition of any kind of property shall be the cost of such property. In other words, it merely withdrew a certain kind of property from the operation of the primary clause of the statute. It gave the taxpayer the benefit of not having the gain charged against him as income, and reciprocally it placed the burden upon him of not receiving credit for any loss. The act of 1923 merely withdraws such property from the operation of subdivision (c) (1) and leaves it subject to clause (a), which in effect reverses the order by placing upon the taxpayer the burden of a charge of the gain as income, and grants him the benefit of a credit for any loss sustained. Clearly this cannot be construed as a tax upon the transfer, but as a rule for the determination of income. It follows, therefore, that the cases cited by petitioner are not analogous, for in those cases the tax was imposed upon the specific transactions which were past and completed before the enactment.

That an income tax may be retroactive in its scope without violating the Federal Constitution is too well settled to admit of argument. Many cases presenting this question have been before the Supreme Court, and they have in each instance been decided adversely to petitioner's contention. Brushaber v. Union Pacific R. R., 240 U. S. 1, 36 S. Ct. 236, 60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713; Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149. Where the measure of a tax is the income

from all sources, it is no valid objection that the enactment includes, in part, property which, as such, cannot be directly taxed. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

We therefore hold that the act of March 4, 1923 (42 Stat. 1560), does not violate the due process clause of the Fifth Amendment[6] to the Federal Constitution.

The order of the Board of Tax Appeals is affirmed.

*Certiorari denied 50 S. Ct. 355, 74 L. Ed. —.