## COMMISSIONER OF INTERNAL REVENUE v. ERICKSON et al.
### No. 2917.

Circuit Court of Appeals, First Circuit.
Dec. 1, 1934.

Rehearing Denied Jan. 16, 1935.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., on the brief), for petitioner for review.

John Noble, of Boston, Mass. (Francis Hines and William J. Kelleher, both of Boston, Mass., on the brief), for Erickson and others, executors.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a petition for review of a decision or order of the Board of Tax Appeals of November 17, 1933, reducing a deficiency estate tax against the estate of Susan M. Stuart, deceased February 10, 1926 (Arioch W. Erickson and Willoughby H. Stuart, Jr., the respondents, executors of the estate), from $57,120.38 to $5,745.13, on the ground that the corpus of a certain trust, which the Commissioner included in decedent's estate in arriving at the deficiency computed by him, should not have been so included.

December 10, 1915, Mrs. Stuart deeded to Arioch W. Erickson, Willoughby H. Stuart, Jr., and Augustus P. Loring, as trustees, certain real estate in Boston and Swampscott, Mass., directing the trustees (1) to pay $5,500 a year out of the net income to her husband during his life and the balance of the income to her, but should she die during the lifetime of her husband such balance of income should go to her issue, and (2) upon the death of her husband or "earlier termination of this trust in whole or in part as hereinafter provided, to pay over and convey the trust property to the said Susan" if living, or to her issue if she should be dead, "free and discharged of all trusts."

The deed further provided:

"3. If any of said real estate be sold, said Susan M. Stuart may revoke and rescind these trusts as to the proceeds thereof, and call for a reconveyance of the trust funds in whole or in part in the case[s] and on the terms and conditions following—[1] She may call for a reconveyance from time to time of any funds of the trust provided the property remaining in the hands of the trustees is then producing and can reasonably be counted on to produce a net income of eleven thousand dollars a year, or [2] said Susan may call for a reconveyance of all the trust funds if she purchases an annuity of five thousand, five hundred dollars ($5500) for said Willoughby H. Stuart [her husband], payable in equal monthly instalments in advance in a sound company selling such annuities.

"The determination of the trustees made in good faith as to the amount of property to be left in the hands of the trustees on a partial withdrawal, or to [the soundness of the] company in which an annuity is to be

purchased on an entire determination of the trust, to be final."

It was stipulated by the parties and found by the Board that this deed was not a gift made in contemplation of death. The Board further found that at the date of Mrs. Stuart's death, February 10, 1926, the trust was still in existence and the trustees had continuously held the two pieces of property in Boston; the Swampscott real estate having been sold.

The estate tax was levied under the Revenue Act of 1924, c. 234, 43 Stat. 253, § 302 (26 USCA § 1094 note), which provides in part as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth."

The Commissioner makes the contentions, which the respondents deny: (1) That the remainder interest, after the termination of the trust by the death of the husband, was an interest belonging to the estate defeasible only by her death in the lifetime of her husband and that interest passed from her estate to others at her death; and (2) that the grant or gift was incomplete as divesting the decedent's estate of all interest in the corpus of the trust, as the deed provided for a revocation of the trust and the reconveyance of the properties to the grantor at the option of the grantor, on certain conditions.

The Board of Tax Appeals decided both of these issues in favor of the respondents. As to the second contention the Board said:

"The power of recall provided in the third paragraph of the trust deed quoted in the findings of fact is so hedged about with conditions and limitations and is so dependent upon the action and approval of the trustees that it could not be said that the decedent could exercise it freely of her own will in any event. The property was not, therefore, under her absolute control and she made no attempt to exercise the limited control referred to in any way at any time before her death."

It is true that the decedent "made no attempt to exercise the * * * control referred to in any way at any time before her death," but we think there was an absolute power of revocation, in whole or in part, reserved in the deed (the Swampscott property having been sold) which the grantor alone and of her own volition could exercise, which was of value to the estate and rendered the grant incomplete until her death.

The broadest power of control is found in that provision of the trust deed wherein the grantor could "call for a reconveyance of all the trust funds if she purchases an annuity of five thousand, five hundred dollars ($5500) for said Willoughby M. Stuart, payable, etc." The power of the trustees to determine the soundness of the company in which the annuity should be purchased was not a limitation on the power of the grantor to determine the trust. The trustees could act in no adverse capacity; they could not negative a proposed revocation from any whimsical motive or because they honestly believed that it would be better for the estate, for the life tenants and for the other possible beneficiaries to continue the trust, or for any reason other than that the company selected was not a sound one. They were bound to determine the soundness of the company and, on the purchase by Mrs. Stuart of the annuity in that company, to reconvey the trust funds to her; they could act in this regard only in good faith. Also if she had undertaken to withdraw from the trust that portion of the property not necessary to produce an income of $11,000—in such case their determination of the amount of the property to be left in the trust must be a bona fide determination. The obligation of the trustees was to act in co-operation with the wishes of the grantor and not adversely to them.

It is contended, however, on the part of the executors that section 3 of the trust deed, above quoted, does not warrant such a construction; that the words "trust funds" as used in that section do not include real estate held in the trust, but is limited to the *proceeds of a sale* or sales of said real estate, if a sale has been made. This manifestly is not so. What the grantor, Mrs. Stuart, meant by the words "trust funds," as used in section 3, and the kinds of property she intended to include within the meaning of those words, is pointed out in section 5 of the deed of trust, where she provides that the trustees "in addition to the powers incidental to their office, shall have power to in-

vest the same in such property, real and personal, and such securities, as he or they may think best, and to change investments at his or their discretion, with full power to sell *any real or personal property* of which the *trust funds* may at any time *consist, etc.*" This shows that she intended the words "trust funds"· should mean *real or personal· property* held in trust, and that where she used the words "all the trust funds" in section 3, "or said Susan may call for a reconveyance of *all the trust funds* if she purchases an annuity of five thousand, five hundred dollars," she meant all the property of the trust "real and personal * * * of which the *trust funds* may * * * consist."

But if it be assumed that the words "trust funds," as used in section 3, are restricted, as the respondents contend, and mean only "the proceeds of a sale or sales of said real estate," such meaning would not aid them. By giving those words that meaning section 3 would then provide that, in case of the sale of any of the said real estate, the grantor, Susan M. Stuart, might do either one of two things: (1) She might call for a reconveyance from time to time of "any funds of the trust," proceeds of a sale or sales of said real estate, provided "the property remaining in the hands of the trustees is then producing * * * eleven thousand dollars a year"; or (2) she might call for a reconveyance of "all the trust funds," proceeds of a sale or sales of said real estate, and rescind or terminate the trust, provided "she purchases an annuity of five thousand, five hundred dollars" for her husband in a "sound company," the soundness of the company to be determined by the trustees acting in good faith. And there can be no doubt that the language employed in the last paragraph of section 3, read in connection with what precedes it, means that, if the grantor purchased the required annuity in a company approved by the trustees and called for a reconveyance of "all the trust funds," she would thereby terminate the trust, for the last paragraph says: "The determination of the trustees made in good faith as to * * * the company in which an *annuity* is to be purchased *on the entire determination of the trust,* to be final." The trustees would then be under obligation to reconvey all the trust property to her, as provided in section 2.

So that, under either construction, the corpus of the trust, to the extent it might have been recalled, is rendered subject to be included in the gross estate of the decedent.

To that extent her control of the economic interest in the trust passed from her estate at her death. Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; Reinecke v. Smith, 289 U. S. 172, 53 S. Ct. 570, 77 L. Ed. 1109.

While she could call for a reconveyance of all the trust funds on the purchase of the annuity, the value of the estate would be diminished by the amount necessary to make the purchase and equitably this amount should not be included in the gross estate. To this we understand the Commissioner assents.

It becomes unnecessary to consider the other contention of the Commissioner.

Since we hold that until the death of Mrs. Stuart the transfer to the trustees was not fully consummated, as were those considered in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081; Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645; Blodgett v. Holden, 275 U. S. 142, 276 U. S. 594, 48 S. Ct. 105, 72 L. Ed. 206, the argument of the respondents that if section 302 (c) of the Revenue Act of 1924 (26 USCA § 1094 note) be applied to this trust which was created in 1915, before the passage of the act, it is repugnant to the Fifth Amendment of the Federal Constitution, cannot avail them.

The order of the Board of Tax Appeals is vacated, and the case is remanded to that Board for further proceedings not inconsistent with this opinion.

## On Petition for Rehearing.

The petition for rehearing must be denied. The questions it presents are: (1) Diminution of the record; and (2) a remand of the case for a new trial.

As to the first question it may be said that the petition does not point out wherein the record in this court is not as full and complete as the record before the Board of Tax Appeals. In the absence of such a showing there is no basis on which to found such an application.

The request that the case be remanded for a new trial is likewise without any basis. It is not claimed that the evidence the petitioners desire to introduce is newly discovered and was not within their power to have produced at the hearing before the Board. Furthermore, if the case were remanded to the Board for a new trial, it would be entirely discretionary with it whether it would receive parol evidence to contradict the intention of

the parties as expressed in the trust instrument. And if the evidence were newly discovered, which it apparently is not, a remand of the case for a new trial would be futile if the Board should conclude to follow what is the customarily recognized law of evidence as to such a matter.

The petition for rehearing is denied.