ESTATE OF JOHN H. WHEELER, DECEASED, ELLIOTT H. WHEELER AND ROLLO C. WHEELER, EXECUTORS, PETITIONERS, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107255, 107258, 107260, 107263, 107265.
Promulgated February 24, 1943.

*Vincent H. O'Donnell, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

#### OPINION.

ARNOLD, *Judge:* These consolidated proceedings involve deficiencies in income tax for the year 1938 as follows:

| | |
|---|---|
| Docket No. 107255 | $30,695.00 |
| Docket No. 107258 | 1,662.71 |
| Docket No. 107260 | 2,138.67 |
| Docket No. 107263 | 2,682.95 |
| Docket No. 107265 | 1,474.27 |

The questions involved are (1) whether the respondent erred in applying the provisions of section 501 (a) of the Second Revenue Act of 1940 in computing "earnings and profits" distributed in liquidation by the John H. Wheeler Co. to its stockholders under section 112 (b) (7) of the Revenue Act of 1938, (2) whether section 501 (a) of the

[1] Proceedings of the following petitioners are consolidated herewith: Cornelia W. Good; Elliott H. Wheeler; Frances V. Wheeler; and Ysabel F. Berliner.

Second Revenue Act of 1940 so applied is constitutional, and (3) whether respondent erred in failing to reduce the amount of earnings and profits determined by him by $5,953.06, the amount of the deficiency in surtax on undistributed profits for 1936 determined by the respondent against the John H. Wheeler Co. The proceedings were submitted upon a stipulation of facts and two exhibits. The facts as stipulated are adopted as our findings of fact. We state herein only such as—are deemed necessary to an understanding of the issues involved.

The petitioners, Elliott H. Wheeler and Rollo C. Wheeler, in Docket No. 107255 are the duly appointed and acting executors of the last will and testament of John H. Wheeler, who died on June 14, 1939, hereinafter referred to as the decedent. All returns involved herein were filed with the collector of internal revenue for the first district of California. On December 2, 1938, the decedent, Frances V. Wheeler, Elliott H. Wheeler, Cornelia W. Good, Ysabel F. Berliner, and Rollo C. Wheeler (the latter not being involved in any of these proceedings) were the holders of all of the outstanding shares of the stock of the John H. Wheeler Co., hereinafter referred to as the Wheeler Co., as follows:

| | Shares held | | Shares held |
|---|---|---|---|
| John H. Wheeler | 2, 459 | Ysabel F. Berliner | 491. 8 |
| Frances V. Wheeler | 491. 8 | Rollo C. Wheeler | 491. 8 |
| Elliott H. Wheeler | 491. 8 | | |
| Cornelia W. Good | 491. 8 | Total | 4, 918. 0 |

The Wheeler Co. was organized as a corporation under the laws of the State of California in 1925 by the decedent and his wife, Frances V. Wheeler. In the years following its organization and until 1929 the decedent and his wife transferred to the company securities having a cost to them of $304,683.49, in exchange for 4,918 shares of the common capital stock of the company having a par value of $100 a share, or an aggregate par value of $491,800. No gain or loss was recognized to the transferors or transferees for Federal income tax purposes by reason of any of such exchanges. On the dates of exchange, the securities transferred to the Wheeler Co. for the 4,918 shares of its common stock had an aggregate fair market value of $491,800. The basis of the securities for the purpose of determining the Federal income tax liability of the Wheeler Co. was $304,684.49, but the basis of the securities set up and entered on the books of account of the company was $491,800.

In computing the gain or loss realized on sales by the Wheeler Co. of the above securities for Federal income tax purposes the Wheeler Co. used the cost basis of the securities to its transferors, the decedent and his wife. In computing the gain or loss on sales by the Wheeler Co.

of such securities, as shown by its books of account and as reflected in its earnings and profits account, the Wheeler Co. used the fair market value of the securities as of the dates of transfer to it. On November 30, 1938, the books of account of the Wheeler Co. were closed and showed a deficit of $47,501.61. This deficit was caused principally by losses on sales by the Wheeler Co. of securities transferred by decedent and his wife to the company, computed on the basis of their book or fair market value at the time of their transfer to the Wheeler Co. by decedent and his wife.

After giving consideration to the application of section 112 (b) (7) of the Revenue Act of 1938,[2] the Wheeler Co. was dissolved on December 2, 1938, and all of its assets, consisting of securities having a fair

---

SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(7) ELECTION AS TO RECOGNITION OF GAIN IN CERTAIN CORPORATE LIQUIDATIONS.—

(A) GENERAL RULE.—In the case of property distributed in complete liquidation of a domestic corporation, if—

(i) the liquidation is made in pursuance of a plan of liquidation adopted after the date of the enactment of this Act, whether the taxable year of the corporation began on, before, or after January 1, 1938 ; and

(ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within the month of December, 1938—

then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F).

\* \* \* \* \* \* \*

(C) QUALIFIED ELECTING SHAREHOLDERS.—The term "qualified electing shareholder" means a shareholder (other than an excluded corporation) of any class of stock (whether or not entitled to vote on the adoption of the plan of liquidation) who is a shareholder at the time of the adoption of such plan, and whose written election to have the benefits of subparagraph (A) has been made and filed in accordance with subparagraph (D), but—

(i) in the case of a shareholder other than a corporation, only if written elections have been so filed by shareholders (other than corporations) who at the time of the adoption of the plan of liquidation are owners of stock possessing at least 80 percentum of the total combined voting power (exclusive of voting power possessed by stock owned by corporations) of all classes of stock entitled to vote on the adoption of such plan of liquidation; or

\* \* \* \* \* \* \*

(D) MAKING AND FILING OF ELECTIONS.—The written elections referred to in subparagraph (C) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary. The filing must be within thirty days after the adoption of the plan of liquidation, and may be by the liquidating corporation or by the shareholder.

(E) NONCORPORATE SHAREHOLDERS.—In the case of a qualified electing shareholder other than a corporation—

(i) There shall be recognized, and taxed as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of December 31, 1938, but without diminution by reason of distributions made during the month of December, 1938 ; and

(ii) There shall be recognized, and taxed as a short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock or securities acquired by the corporation after April 9, 1938, exceeds his ratable share of such earnings and profits.

\* \* \* \* \* \* \*

market value of $624,560 and cash in the sum of $111.84, were distributed in liquidation, during December 1938, proportionately to the stockholders of the company. At the time of dissolution substantially all the securities originally acquired from John H. Wheeler and Frances V. Wheeler had been sold by the Wheeler Co. The fair market value of the assets of the Wheeler Co. received by its stockholders in liquidation as of December 2, 1938, and the basis of the stock of the Wheeler Co. to each stockholder for Federal income tax purposes at the time of liquidation are as follows:

| Stockholders | Fair market value as of Dec. 2, 1938 | Basis of Wheeler Co. stock |
|---|---|---|
| John H. Wheeler | $312,335.92 | $153,505.01 |
| Frances V. Wheeler | 62,467.18 | 30,701.00 |
| Elliott H. Wheeler | 62,467.18 | 30,701.00 |
| Cornelia W. Good | 62,467.18 | 30,701.00 |
| Ysabel F. Berliner | 62,467.18 | 30,701.00 |
| Rollo C. Wheeler | 62,467.18 | 30,701.00 |

Pursuant to the provisions of section 112 (b) (7) the decedent and other petitioners herein executed written elections on Form 964 to have the gains on the shares of stock of the Wheeler Co. owned by them on December 2, 1938, recognized and taxed in accordance with section 112 (b) (7).

The decedent and other petitioners herein each reported as a long term capital gain in their respective 1938 Federal income tax returns only the value of their proportionate share of the securities acquired by the Wheeler Co., after April 9, 1938, and the proportionate amount of cash which was distributed in liquidation to each as follows:

| | |
|---|---|
| John H. Wheeler | $402.86 |
| Frances V. Wheeler | 80.57 |
| Elliott H. Wheeler | 80.57 |
| Cornelia W. Good | 80.57 |
| Ysabel F. Berliner | 80.57 |

The respondent determined that the Wheeler Co. had accumulated earnings and profits of $132,813.38 as of December 2, 1938, and that the gain realized by each petitioner was recognizable in addition to the amount reported to the extent of his ratable share thereof under section 112 (b) (7) as follows:

| | |
|---|---|
| John H. Wheeler | $66,406.69 |
| Frances V. Wheeler | 13,281.38 |
| Elliott H. Wheeler | 13,281.38 |
| Cornelia W. Good | 13,281.38 |
| Ysabel F. Berliner | 13,281.38 |

The amount of accumulated earnings and profits of the Wheeler Co. was determined by the respondent as follows:

| | |
|---|---:|
| Fair market value of 4,918 shares of Wheeler Co. stock or fair market value of securities exchanged therefor, set up on corporate books as cost of securities_____ | $491,800.00 |
| Cost of securities to decedent and wife transferred by them to Wheeler Co. for its stock_____ | 304,684.49 |
| Excess of corporate book value over transferors' cost_____ | 187,115.51 |
| Less deficit on corporate books as of December 31, 1938_____ | 47,501.61 |
| Surplus as of December 31, 1938 based on transferors' cost_____ | 139,613.90 |
| Less excess of book value over transferors' cost of securities unsold at liquidation of Wheeler Co._____ | 6,800.52 |
| Accumulated earnings and profits as of December 31, 1938 available for distribution to 4,918 shares of stock_____ | 132,813.38 |

The petitioners' computation of earnings and profits of Wheeler Co. differs from that of respondent in that petitioners assert that the cost to the company of the securities transferred to it in exchange for its 4,918 shares of stock is the fair market value of the securities on the date of transfer, and not the cost of the securities to the transferors as used by respondent in his computation of the deficiencies.

In the income tax return of the Wheeler Co. for 1938 it is stated that the return was made on the basis of cash receipts and disbursements.

Section 112 (b) (7) (E) (i) provides that upon complete liquidation of a domestic corporation under subsection (7) there shall be recognized and taxed as a dividend to the noncorporate shareholders the ratable share of the "earnings and profits" of the corporation accumulated after February 28, 1913. The respondent contends that the "earnings and profits" distributed in liquidation by the Wheeler Co. and taxable to petitioners as dividends should be computed by applying the provisions of section 501 (a) of the Second Revenue Act of 1940, which so far as applicable herein is set forth in the margin.[3]

---

[3] SEC. 501. EARNINGS AND PROFITS OF CORPORATIONS.

(a) UNDER INTERNAL REVENUE CODE.—Section 115 of the Internal Revenue Code is amended by inserting at the end thereof the following new subsections:

"(1) EFFECT ON EARNINGS AND PROFITS OF GAIN OR LOSS AND OF RECEIPT OF TAX-FREE DISTRIBUTIONS.—The gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation—

"(1) for the purpose of the computation of earnings and profits of the corporation, shall be determined, except as provided in paragraph (2), by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; but

"(2) for the purpose of the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain.

Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was

The petitioners contend that the "earnings and profits" of the Wheeler Co. for the purposes of section 112 (b) (7) should be computed in accordance with the rules established by decisions of the courts and the Board which hold that "taxable income" is not the equivalent of "earnings and profits," and that on the disposition by a corporation of property acquired by it in exchange for its stock in a transaction wherein gain is not recognizable for the purposes of computing "taxable income," the basis of such property to the corporation for the purpose of determining "earnings and profits" available for the distribution of dividends is the cost of the property to the corporation or its fair market value at the time of the exchange, although the basis for the determination of taxable income on the same transaction is cost to the transferor of the property. In support of this contention petitioners cite *Charles F. Ayer*, 12 B. T. A. 284; *Ida I. McKinney*, 32 B. T. A. 450; affd., 87 Fed. (2d) 811; *Susan T. Freshman*, 33 B. T. A. 394; *R. M. Weyerhaeuser*, 33 B. T. A. 594; *Robert R. McCormick, Executor*, 33 B. T. A. 1046; *Helen Sperry Lea*, 35 B. T. A. 243 (reversed 96 Fed. (2d) 55, on the ground that transaction was a nontaxable reorganization under section 112 (i) (1) (B) (g), Revenue Act of 1928); *F. J. Young Corporation*, 35 B. T. A. 860; affd., 103 Fed. (2d) 137; *W. S. Farish & Co.*, 38 B. T. A. 150; affd., 104 Fed. (2d) 833; *W. & K. Holding Co.*, 38 B. T. A. 830; *A. & J., Inc.*, 38 B. T. A. 1248; and *Dorothy Whitney Elmhirst*, 41 B. T. A. 348. The petitioners further contend that section 501 of the Second Revenue Act of 1940, if properly construed, is not applicable to voluntary liquidation and dissolution of a corporation commenced and completed in 1938, but if it is construed to be applicable to a liquidation completed in 1938, such construction violates the rule of "permissible retroactivity" and that therefore section 501 is unconstitutional as in violation of the due process clause of the Fifth Amendment to the Constitution of the United States.

The respondent contends that, while some of the decisions cited by petitioners had been handed down prior to the liquidation of the Wheeler Co., nevertheless there had been no *final* adjudication of the proper basis to be used in determining the earnings and profits of a

made. Where in determining the adjusted basis used in computing such realized gain or loss the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings or profits, then the latter adjustment shall be used in determining the increase or decrease above provided. * * *."

\* \* \* \* \* \* \*

(b) EFFECTIVE DATE OF AMENDMENT.—The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1938.

(c) UNDER PRIOR ACTS.—For the purposes of the Revenue Act of 1938 or any prior Revenue Act the amendments made to the Internal Revenue Code by subsection (a) of this section shall be effective as if they were a part of each such Revenue Act on the date of its enactment. Nothing in this subsection shall affect the tax liability of any taxpayer for any year which, on September 20, 1940, was pending before, or was theretofore determined by, the Board of Tax Appeals, or any court of the United States.

corporation; that article 115-3 of Regulations 101,[4] promulgated under the Revenue Act of 1938, providing that gains or losses should be brought into earnings and profits at the time and to the extent that gains and losses are recognized under the provisions of section 112 or corresponding provisions of prior acts, gave notice to the taxpayers that the Commissioner maintained his position despite the decisions of the Board and the Circuit Courts; that Congress resolved the question by enacting section 501 of the Second Revenue Act of 1940; and that its applicability to the Revenue Act of 1938 is not unconstitutional.

Section 501 of the Second Revenue Act of 1940 is a complete answer to petitioners' contention as to what constitutes earnings and profits of a corporation in liquidation if it is applicable to the liquidation here in 1938 and is not in violation of the due process clause of the Fifth Amendment to the Constitution.

That Congress clearly intended the section to apply to transactions in prior years admits of no doubt. Subsection (c) thereof specifically provides that "for the purposes of the Revenue Act of 1938 or any prior Revenue Act the amendements made to the Internal Revenue Code by subsection (a) of this section shall be effective as if they were a part of each such Revenue Act on the date of its enactment." There is no ambiguity in this respect. This language must be given effect in determining Congressional intent. The petitions herein were filed after September 20, 1940.

It then remains to be determined whether the amendment, applied to the liquidation in question, is in violation of the due process clause of the Fifth Amendment to the Constitution, because of its retroactive provisions. If not, then respondent's determination must be approved.

Retroactivity alone of a taxing statute is not sufficient to bring the law into conflict with the Federal Constitution. *Welch* v. *Henry*, 305 U. S. 134; *United States* v. *Hudson*, 299 U. S. 498; *Cooper* v. *United States*, 280 U. S. 409; *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1. In the latter case the Supreme Court held that the due

---

[4] ART. 115-3. *Earnings or Profits.*—In determining the amount of earnings or profits (whether of the taxable year, or accumulated since February 28, 1913, or accumulated prior to March 1, 1913) due consideration must be given to the facts, and mere bookkeeping entries increasing or decreasing surplus will not be conclusive. Among the items entering into the computation of corporate earnings or profits for a particular period are all income exempted by statute, income not taxable by the Federal Government under the Constitution, as well as all items includible in gross income under section 22 (a) of the Act or corresponding provisions of prior Acts. Gains and losses within the purview of section 112 or corresponding provisions of prior Acts are brought into the earnings and profits at the time and to the extent such gains and losses are recognized under that section. Interest on State bonds and certain other obligations, although not taxable when received by a corporation, is taxable to the same extent as other dividends when distributed to shareholders in the form of dividends.

[Similar provisions are contained in art. 115-3, Regulations 101, 1938 Act, and Regulations 94, 1936 Act, and art. 115-1, Regulations 86, 1934 Act.]

process of law clause is not a limitation upon the taxing power conferred upon Congress by the Constitution, unless, under a seeming exercise of the taxing power, the taxing statute is so arbitrary as to compel the conclusion that it is a confiscation of property rather than the levying of a tax, or so wanting in basis for classification as to produce such a gross and patent inequality as inevitably to lead to the same conclusion.

Petitioners cite and strongly rely upon *Nichols* v. *Coolidge*, 274 U. S. 531; *Blodgett* v. *Holden*, 275 U. S. 142; and *Untermyer* v. *Anderson*, 276 U. S. 440, in support of their contention that the application of section 501 (a), Second Revenue Act of 1940, is arbitrary, capricious, and amounts to confiscation and therefore offends the Fifth Amendment. These cases involve gifts made prior to the enactment of the statute which sought to tax them. It was held that, as the gifts were voluntary acts not subject to tax when made and might not have been made otherwise, to tax them under a retroactive statute was violative of the Fifth Amendment. The facts here do not justify the conclusion there reached.

The liquidation of the Wheeler Co. in 1938 was not prompted by motives of unselfishness and generosity as in the case of gifts, but, in the face of mounting surtaxes on personal holding companies, it was advisable from a tax standpoint to liquidate, as will be hereinafter pointed out.

Neither is the fact that the liquidation of the Wheeler Co. was completed in 1938 prior to the enactment of section 501 (a) of the Second Revenue Act of 1940 sufficient to make invalid the application of the provisions thereof to the 1938 Act. It is necessary to consider the nature of the tax and the transactions involved. *Milliken* v. *United States*, 283 U. S. 15. In that case it was held that a statute imposing an estate transfer tax was not unconstitutional as applied to gifts in contemplation of death made before the enactment of such statute and during the existence of a prior act imposing lower rates.

The Wheeler Co. was a personal holding company, the type of corporation referred to as an "incorporated pocketbook" and "the most prevalent form of tax avoidance practiced by individuals with large incomes." Report No. 704 from Committee on Ways and Means, 73d Cong., 2d sess., p. 11. Under the Revenue Act of 1932 a corporation was required to pay a tax of 13¾ percent of its net income (sec. 13), whereas an individual was required to pay, in addition to a normal tax of 4 percent on the first $4,000 net income and 8 percent on the excess above $4,000, a surtax ranging from 1 percent upon the first $4,000 in excess of $6,000 to 55 percent upon the net income in excess of $1,000,000. Secs. 11 and 12. As pointed out in the above report, an individual receiving $1,000,000 annual income

from taxable bonds was subject under the then existing law to a tax of $571,100. However, if he had formed a corporation and turned such bonds over to the corporation the only tax payable would be a tax of $137,500 as long as no distribution of dividends was made by the corporation. Thus the formation of a corporation for the purpose of holding the securities and the retention by it of the income therefrom effected a tax saving to the individual of $433,600. In the Revenue Act of 1934, Congress for the first time imposed a surtax of 30 percent upon the undistributed adjusted net income of every personal holding company as defined therein not in excess of $100,000, plus 40 percent thereof in excess of $100,000. Sec. 351. In section 109 of the Revenue Act of 1935 the rates provided for in section 351 of the 1934 Act were changed and ranged from 20 percent of the undistributed adjusted net income not in excess of $2,000 to 60 percent of such income in excess of $1,000,000. The rates were changed again in the Revenue Act of 1936. The surtaxes thus imposed were however ineffective to eliminate tax avoidance by means of a holding company. Report No. 1546, Committee on Ways and Means, 75th Cong., 1st sess., pp. 3–5. Section 351 of the Revenue Act of 1937 increased the rates to 65 percent of the undistributed adjusted net income of personal holding companies not in excess of $2,000 plus 75 percent of such income in excess of $2,000. The same rates were imposed by section 401 of the Revenue Act of 1938. This surtax was imposed in addition to the tax levied upon the taxable net income of corporations generally under section 13 of the Revenue Act of 1938 and corresponding sections of prior revenue acts referred to. See *Schinebro, Inc.*, 45 B. T. A. 580; affirmed on this point, 131 Fed. (2d) 504. The high surtax changed the tax status of a personal holding company from a tax benefit to a tax burden to the individual or individuals who caused its creation. The increased taxes were directed to the elimination of so flagrant a scheme of tax avoidance. The motive of tax avoidance which prompted creation of such a corporation would undoubtedly under the circumstances suggest a dissolution of the corporation for the purpose of minimizing tax liability, and we think petitioners' contention that, had they had reason to believe the tax assessed would be imposed the Wheeler Co. would not have been liquidated, is without substance.

The provisions of subsection (E) of section 112 (b) (7) were originally offered as an amendment to section 115 (c) as contained in the 1938 Revenue Bill (H. R. 9682) by Senator George for the purpose of encouraging and facilitating prompt liquidation of personal holding companies, and other corporations falling outside of the technical classification of personal holding companies, which had not been used to evade taxes and had no substantial accumulation

of earnings and profits but held real estate or unlisted corporate securities which were not readily marketable and had greatly appreciated in value, by postponing the tax on such unrealized appreciation in value imposed upon stockholders upon liquidation until the property is sold by the stockholders. He stated that the imposition of tax in such cases based upon the entire appreciation in value, even though unrealized from a business point of view, frequently compelled the sale of the property to establish the amount of taxable gain or to raise the amount required to pay the tax, which discouraged liquidation, as a result of which the property remained frozen in the corporation since any gain realized from a sale of the assets by the corporation would not be entitled to the benefits of the capital gain provision when distributed to the stockholders. (Cong. Rec., vol. 83, pp. 5171–5172.)

The amendment offered by Senator George was finally incorporated in section 112, entitled "Recognition of Gain or Loss," and not in section 115, dealing with "Distributions by Corporations." This is highly significant. It indicates clearly that the terms and provisions thereof should be interpreted in the light of and in harmony with the rules and principles established by section 112, and sections 111 and 113 closely related therewith, and not by the principles established by cases relied upon by petitioners, particularly those which involved the question whether or not a corporate distribution was a taxable dividend within the meaning of section 115 of the Revenue Act of 1938 or the corresponding section of prior revenue acts. Section 112 (b) (7) makes no reference to section 115. In our opinion a reading of the statement made by Senator George and the fact of the inclusion of the amendment offered by him as an amendment to section 112 instead of section 115 should have forewarned the petitioners that their interpretation of section 112 (b) (7) was mistaken and incorrect and not in accord with Congressional intent. By section 501 of the Second Revenue Act of 1940 such intent was made specific, as appears from Report No. 2894 from the Committee on Ways and Means, 76th Cong., 3d sess., pp. 41–42, pertaining to section 401 (later 501) amending section 115, wherein it is stated that:

The purpose of this amendment is to clarify the law with respect to what constitutes earnings and profits of a corporation. This is important not only for the purpose of determining whether distributions are taxable dividends but also in determining equity invested capital for excess-profits tax purposes.

* * * The rule, applied by the Treasury under existing law, is that while gains or losses which are not recognized by reason of the provisions of section 112 neither increase or diminish the earnings or profits, the earnings or profits are increased or diminished by the entire amount of the recognized gain or loss, computed in accordance with the provisions of sections 111, 112 and 113. To

gether with the provisions of section 115 (h) of the Internal Revenue Code, and the principles established in *Commissioner* v. *Sansome*, 60 F. (2d) 931, and following decisions, the rule effectuates the provisions of section 112. * * *

The purpose of the amendment was not to provide a method of tax avoidance to stockholders of personal holding companies, but to provide for a postponement of tax to the extent of so much of the tax as would be imposed on the portion of the gain to the stockholders represented by an increase in value of the assets distributed, i. e., a gain which had not been realized by the corporation or the stockholders from a business point of view. Increase or appreciation in value of corporate assets would be reflected in the gain realized by stockholders upon liquidation because the fair market value of such assets upon liquidation is a factor in determining gain or loss to the stockholders. Herein the gain, including the appreciation in value between cost to the transferors and value at the time of exchange, was realized upon the sale by the corporation of the securities transferred to it for its stock.

The gain realized by the stockholders of the Wheeler Co. upon its liquidation in 1938 was taxable under the Revenue Act of 1938 either under section 112 (b) (7) to the extent therein provided or under section 115 (c) of that act in the event the election granted by section 112 (b) (7) had not been exercised. Hence section 501 (a) of the Second Revenue Act of 1940 did not impose a tax upon a transaction the gains of which were not taxable in 1938, as was the situation in *Nichols* v. *Coolidge, supra; Blodgett* v. *Holden, supra;* and *Untermyer* v. *Anderson, supra.* Such cases are not controlling herein. Justice Brandeis, in his dissenting opinion in *Untermyer* v. *Anderson, supra,* stated: "Except for the peculiar tax involved in *Nichols* v. *Coolidge,* * * * no federal revenue measure has ever been held invalid on the score of retroactivity." In *Seattle* v. *Kelleher,* 195 U. S. 351, liability for taxes under retroactive legislation was stated to be "one of the notorious incidents of social life." Petitioners cited no other case holding a revenue statute invalid on the ground of retroactivity decided since *Untermyer* v. *Anderson, supra.* All the cases cited by them on briefs decided since the promulgation of the above three cases held the statutes involved valid, although attacked because retroactive in application.

Under section 112 (b) (7) each stockholder was taxable on (i) so much of his gain as was not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, and (ii) so much of the remainder of his gain as was not in excess of the amount by which the value of that portion of the assets received by him which consisted of money, or stock or securities acquired by

the corporation after April 9, 1938, exceeded his ratable share of such earnings and profits. The gain described in (i) was taxable as a dividend and the gain described in (ii) was taxable as a short term or long term gain, as the case might be. Tax on any gain above the gains enumerated was postponed until the disposition by the stockholder of the property received by him on liquidation. Taking the case of John H. Wheeler as illustrative, it appears that his gain on liquidation was $159,177.85 as computed by the respondent, the correctness of which determination is not in dispute. The respondent determined that this gain was recognizable under section 112 (b) (7) to the extent of $66,809.55, consisting of his ratable portion of securities acquired by the Wheeler Co. after April 9, 1938, of the value of $346.94 and cash of $55.92, both taxable as capital gain, and his ratable share of corporate earnings and profits of $66,406.69 taxable as a dividend. As hereinafter stated, the petitioners claim, and correctly so, that the amount of corporate earnings and profits as determined by the respondent should be reduced by the amount of $5,953.06, additional surtax on undistributed profits for 1936. Since John H. Wheeler owned one-half of the stock, his ratable share of the corporate earnings will be reduced by one-half of such amount and the amount of gain recognizable to him will be reduced accordingly. The remainder of the gain is not recognizable under section 112 (b) (7) for tax purposes until and unless realized by the stockholder on the disposition of the securities received by him on liquidation. Furthermore, the basis of such securities for computing gain or loss on future sales or other disposition thereof under the provisions of section 113 (a) (18) is decreased by the amount of cash received and increased by the amount of gain recognizable to him, which results in a substantially increased basis to the stockholder. Whether or not he will ever pay a tax on the gain not recognizable under section 112 (b) (7) can not be presently determined. If the stockholders had not elected to liquidate under section 112 (b) (7), the gain to the extent of 50 percent would have been taxable to John H. Wheeler under section 115 (c), or the amount of $79,588.93. It can not be said that the application of the provisions of section 501 (a) to section 112 (b) (7) results in a harsh tax, since the gain recognizable thereunder is substantially less than the amount of gain which would have been taxable under section 115 (c). That the tax under section 112 (b) (7) is more than petitioners expected to pay by reason of their interpretation of the provisions of that section is not a ground for declaring section 501 invalid as arbitrary and confiscatory. The petitioners elected to be taxed under section 112 (b) (7) and they can not complain if such election resulted in a greater

tax than they expected to pay. It may be noted that the Wheeler Co. apparently was not the type of corporation section 112 (b) (7) was intended to aid. It did not hold "frozen" assets which had increased in value, which increase, although not realized, would have been taxable to the stockholders. The gain taxed was not an unrealized gain represented merely by an appreciation in value of assets held by the corporation; it represented a gain realized on sales by the Wheeler Co. of securities turned over to it by decedent and his wife, under sections 111, 112, and 113. As pointed out above, applying section 501 (a) to section 112 (b) (7), the gain recognizable was less than it would have been under section 115 (c), so that the petitioners were benefited to that extent at least.

We therefore conclude that section 501 of the Second Revenue Act of 1940 is not unconstitutional as applied to section 112 (b) (7) of the Revenue Act of 1938.

The petitioners do not question the amount of earnings and profits computed by the respondent under section 112 of the Revenue Act of 1938 as amended by section 501 of the Second Revenue Act of 1940, except that it is contended that, if section 501 is applicable, earnings and profits should be reduced by the amount of $5,953.06. The Wheeler Co. in its 1936 return, in computing its surtax on undistributed profits, claimed a dividends paid credit of $30,465.41, which the respondent disallowed, resulting in a deficiency in surtax on undistributed profits in the amount of $5,953.06. The action of the respondent was approved by this Court in *Estate of John H. Wheeler*, 1 T. C. 401. The evidence therein showed that the 1936 income tax return of the company was made on the cash basis, which indicates that the books were kept on such basis. The respondent contends that the determination of earnings and profits available for distribution of dividends must follow the method of accounting employed by the corporation in computing its taxable income. In *M. H. Alworth Trust*, 46 B. T. A. 1045 (appeal pending, C. C. A., 8th Cir., Sept. 8, 1942), wherein a like question was involved and a similar argument was made by the respondent, it was held that, although the taxable income of the taxpayer therein was computed on the cash basis, in determining earnings and profits available for distribution as dividends, accrued but unpaid taxes must be taken into account. The decision in that case is controlling herein. The computation of the respondent, in so far as he failed to take into account the amount of $5,953.06, accrued but unpaid surtax on undistributed profits for 1936, is therefore erroneous.

*Decisions will be entered under Rule 50.*