JACOB H. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110267. Promulgated January 31, 1944.

*Dana Latham, Esq.*, for the petitioner.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

TURNER, *Judge*: The respondent has determined a deficiency in income tax against the petitioner for the year 1938 in the amount of $17,500.48. The sole question for determination is whether, for the purposes of section 112 (b) (7) (E) (i) of the Revenue Act of 1938, the earnings and profits of a corporation include that portion of the depletion reserve resulting from the allowance of percentage depletion for the years 1933 to 1938, inclusive, which exceeds the amount which would have been allowable if depletion for those years had been based on cost.

The facts have been stipulated and are found as stipulated.

The petitioner, formerly a resident of Kilgore, Texas, now resides in Los Angeles, California. He filed his income tax return for the year 1938 with the collector of internal revenue at Dallas, Texas.

The petitioner was the owner of a lease covering certain oil properties in Rusk County, Texas. In 1931 he organized a corporation known as Cal-Tex Corporation and transferred the said lease to that

corporation for all of its capital stock, except qualifying shares. The qualifying shares were also beneficially owned by petitioner.

The Cal-Tex Corporation developed the above described lease, and in due course produced oil and other hydrocarbon substances in substantial quantities. For the years 1931 and 1932 it took no deductions for depletion of the said properties. For the years 1933 to 1938, inclusive, it computed and took deductions for depletion on the percentage basis. For that period the depletion allowances so computed and deducted exceeded by $71,188.87 the amounts which would have been allowable if depletion had been computed on the basis of cost.

In December 1938 the Cal-Tex Corporation was liquidated and all of its assets were distributed to petitioner, its sole stockholder. The petitioner, a "qualified electing shareholder," not a corporation, elected to be taxed in respect of the gains derived from the liquidation of Cal-Tex Corporation under the provisions of section 112 (b) (7) of the Revenue Act of 1938.[1]

It is the determination and contention of the respondent that the earnings and profits of the corporation, for the purposes of applying section 112 (b) (7) (E) (i), *supra*, included the excess of percentage depletion allowances for the years 1933 to 1938, inclusive, over and above the amounts which would have been allowed for those years if depletion had been computed on the basis of cost.

The petitioner concedes that, for the purpose of determining earnings and profits of a corporation available for distribution within the meaning of section 115, the respondent's theory of the percentage depletion reserve is correct and that *Charles F. Ayer*, 12 B. T. A. 284, cited by the respondent, is authority therefor. He contends, however, that similar treatment of the percentage depletion reserve in deter-

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

    \*     \*     \*     \*     \*     \*     \*

  (b) EXCHANGES SOLELY IN KIND.—

    \*     \*     \*     \*     \*     \*     \*

  (7) ELECTION AS TO RECOGNITION OF GAIN IN CERTAIN CORPORATE LIQUIDATIONS.—

  (A) GENERAL RULE.—In the case of property distributed in complete liquidation of a domestic corporation, if—

    (i) the liquidation is made in pursuance of a plan of liquidation adopted after the date of the enactment of this Act, whether the taxable year of the corporation began on, before, or after January 1, 1938; and

    (ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within the month of December, 1938—

then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraphs (E) and (F).

    \*     \*     \*     \*     \*     \*     \*

  (E) NONCORPORATE SHAREHOLDERS.—In the case of a qualified electing shareholder other than a corporation—

    (i) There shall be recognized, and taxed as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of December 31, 1938, but without diminution by reason of distributions made during the month of December, 1938; \* \* \*

mining earnings and profits under section 112 (b) (7) (E) (i), *supra*, would not serve, but to the contrary would defeat, the purpose for which that section was enacted. Relying on the explanatory statement of Senator George [2] when offering the amendment which became section 112 (b) (7), *supra*, he argues that the purpose of the section was to permit stockholders, through the dissolution of their corporation within the time specified, "to put themselves back in the same position in which they would have been if they had not incorporated," and, since the petitioner would have been entitled to percentage depletion had he personally remained owner of the property and the amount thereof would not have been subject to tax in his hands, he would, through liquidation of Cal-Tex Corporation, be put back in the same position only if the percentage depletion reserve is excluded *in toto* from the "earnings and profits" of Cal-Tex Corporation for the purpose of applying section 112 (b) (7) (E) (i), *supra*.

The argument of the petitioner fails for two reasons. In the first place, section 112 (b) (7), *supra*, shows on its face that it was not designed to completely restore a stockholder to the same income tax position in which he would have been if the corporation had not been formed, and there is nothing whatever in the language of that section to support the view that Congress intended to attribute to the term "earnings and profits" a meaning different in any way from its meaning when used elsewhere in the statute. In the second place, the statement of Senator George does not say that Congress intended, or that the section in question was designed, to restore a stockholder in all respects to the position in which he would have been if no corporation had been formed. He did say that stockholders of certain types of corporations "now wish to get rid of the corporate entity in order to escape the cor-

---

[2] The proposed amendment will encourage and facilitate prompt liquidation of personal holding companies and other corporations falling outside the technical classification of personal holding companies which have not been used to evade taxes and which have no substantial accumulations of earnings and profits.

For example. assume that a corporation was formed to take title to certain real-estate or unlisted corporate securities which are not readily marketable. By 1938 the property has tripled in value. In the meantime. however. the rents or dividends on such property have been inconsequential. or have been distributed to the stockholders annually. The stockholders now wish to get rid of the corporate entity in order to escape the corporate tax burdens or to put themselves back in the same position in which they would have been if they had not incorporated.

The 1938 revenue bill as reported by the Senate committee will impose a tax on the stockholders on liquidation based on the entire appreciation in value even though unrealized from a business point of view. If a liquidation occurs under those provisions, the stockholders will frequently be compelled to resell in order to establish the amount of taxable gain or to raise the amount required to pay the tax. The result is that the bill as reported will continue the tendency of the present law to discourage liquidation of these corporations. At the same time. the property will remain "frozen" in the corporation since any gain resulting from a sale of the assets by the corporation will not be entitled to the benefits of the capital-gain provision when distributed to the stockholders.

The proposed amendment would permit postponement of tax on this unrealized appreciation in value on liquidation until the property is sold by the stockholders. By taxing the gain on a liquidation to the extent of accumulated earnings and profits as an ordinary dividend, the application of the amendment would be limited primarily to those corporations which have not been used for tax-avoidance purposes. * * *

porate tax burdens or to put themselves back in the same position in which they would have been if they had not incorporated." He then proceeded with the proposition that under the provisions of the bill as it then existed a stockholder, on liquidation of a corporation, would be required to report as gain appreciation in the value of the corporate assets, even though such appreciation had not been realized by the corporation. He then pointed out that "The proposed amendment would permit postponement of tax on this unrealized appreciation in value on liquidation until the property is sold by the stockholders." The amounts here in question have nothing whatever to do with unrealized appreciation on property held by the corporation, but, to the contrary, represent realized gains by the corporation from the development and operation of the oil properties, even though that gain was not taxed to the corporation by reason of the allowance of percentage depletion, which in this case was in excess of the depletion which would have been allowable if based upon the cost of the properties. The amounts here in dispute do in fact represent earnings and profits of the corporation, and under the plain language of section 112 (b) (7) (E) (i), *supra*, there is no postponement of recognition of gains and profits coming to a stockholder of a corporation liquidated pursuant to the provisions of section 112 (b) (7), *supra*. The determination of the respondent is accordingly sustained. See and compare *Charles F. Ayer*, *supra*, and *Estate of John H. Wheeler*, 1 T. C. 640.

The parties have agreed upon the figures to be used in case of determination of the issue as herein determined, and effect will be given to such stipulation in making the recomputation.

*Decision will be entered under Rule 50.*