Edith K. Timken v. Commissioner.
Timken v. Commissioner
Docket No. 111314.
United States Tax Court
1944 Tax Ct. Memo LEXIS 218; 3 T.C.M. (CCH) 631; T.C.M. (RIA) 44205; June 7, 1944
*218 George H. Rudolph, Esq., and Luther Day, Esq., for the petitioner. T. F. Callahan, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency of $223,498.95 in income tax of the petitioner for the calendar year 1938. The issues submitted are the amount of the tax liability resulting to petitioner (1) from the liquidation under section 112 (b) (7) of the Revenue Act of 1938, in December 1938 of Avalon Investment Corporation, a personal holding company, (hereinafter called "Avalon"), in which she was the sole stockholder, and (2) upon the receipt by her or her nominee of distributions of dividend claims in that and another similar liquidation. Findings of Fact The facts are stipulated and so found by us. Petitioner is a resident of Canton, Ohio. She reported her income on the cash basis. Her return for the taxable year involved was filed with the collector of internal revenue for the eighteenth district of Ohio. This proceeding was instituted by a petition for redetermination filed June 1, 1942. Avalon was a personal holding company organized under the laws of Delaware in 1930. At all times pertinent hereto and at *219 the time of its liquidation petitioner was its sole stockholder, owning all of its outstanding 6,916 shares of preferred stock of a par value of $691.600, and its 1,125 shares of common stock of a par value of $112,500. At the time of the liquidation of the corporation, as hereinafter detailed, the adjusted cost to petitioner of the preferred stock was $719,860, and the common stock $495,386.96. The articles of incorporation of Avalon provided, and the certificates for shares of preferred and common stock carried the provision reading, inter alia, as follows: "(3) The corporation may at its option, at any time or from time to time, redeem all or any part of the preferred stock by paying therefor in cash the redemption price of One Hundred Five Dollars ( $105) per share plus dividends accrued thereon and/or in arrears to the date fixed for such redemption. * * * "(4) In the event of any voluntary or involuntary liquidation, dissolution or winding up of the corporation or any sale of all or substantially all of its assets, the holders of preferred stock shall be entitled to receive payment in cash of One Hundred Five Dollars ( $105) for each share of preferred stock held by them, *220 plus dividends accrued and/or in arrears to the date fixed for such redemption and no more. Dividends accrued and/or in arrears in each case shall be calculated to the date upon which the holders of preferred stock shall be entitled to receive the payment provided for in this paragraph (4) and the funds required to make such payment shall be set apart so as to be and to continue to be available only for such payment. No sum shall be paid, and no distribution of any assets of the corporation shall be made, to the holders of common stock in any such event until such payment to the holders of the preferred stock shall have been made or moneys therefor deposited in trust, but after such payment to the holders of preferred stock or deposit in trust, the remaining assets of the corporation may be distributed among the holders of the common stock and/or other stock ranking junior to the preferred stock. * * *" Throughout 1935 and 1936, Avalon was the owner of 500 of the 800 shares of the capital stock of the Imperial Investment Company (hereinafter called "Imperial"), a personal holding company organized under the laws of Delaware, the other 300 shares of which capital stock were then owned *221 by one H. H. Timken, the husband of petitioner. In 1935 Imperial distributed to its stockholders, including Avalon, 100,000 shares of common stock of Louisiana Land & Exploration Company having an aggregate fair market value on the date of distribution of $900.000 and an adjusted basis to the distributor of $202,326.19 and, in 1936, made a similar distribution of 12,000 shares of common stock of Twin Coach Company having at the date of distribution a fair market value of $154,500 and adjusted basis to Imperial of $30,857.14. Avalon, as stockholder, received 5/8 of the distribution so made. On December 5, 1938, a specific plan for the complete liquidation of Avalon, pursuant to section 112 (b)(7) of the Revenue Act of 1938, the pertinent provisions of which appear in the margin. [1] was adopted by its directors and assented to by petitioner as the owner of all of its outstanding stock. This plan provided in detail (1) for the redemption of the preferred stock at $105, as required by the articles of incorporation, by the transfer to petitioner or her nominee of $300,000 in cash and 58,000 shares of common stock of the Louisiana Land & Exploration Company and (2) the distribution of *222 the remaining assets to petitioner or her nominee in complete liquidation and cancellation of the common stock, petitioner to assume liability for all debts of the liquidated corporation. *223 Following this, on December 6, 1938, these distributions were made under petitioner's direction, (1) the cash and stock transferred in redemption of the preferred stock and (2) all of the remaining assets transferred in cancellation of the common stock, with the exception of 500 shares of common stock of Imperial, were assigned and delivered to Henry H. Timken, Jr., and William R. Timken, as trustees under a revocable trust agreement executed by petitioner and hereafter referred to as the Avalon Trust, of which petitioner was the sole beneficiary. The aforementioned 500 shares of common stock of Imperial were assigned and delivered to petitioner. The assets thus transferred to the Avalon Trust and to petitioner in cancellation of the 1,125 outstanding shares of common stock of Avalon consisted of $11,333.13 in cash, certain stocks and securities determined by Avalon and petitioner to have a fair market value of $4,203,069.69, and claims for dividends already declared on these stocks, but not yet paid, in the sum of $22,570.98. Petitioner, on December 6, 1938, delivered to Avalon her preferred and common shares of stock in that corporation. These were cancelled and the charter of *224 that corporation was surrendered to and cancelled by the State of Delaware on December 8, 1938. Petitioner duly filed with the Commissioner of Internal Revenue, within 30 days after adoption of the plan of liquidation by Avalon, her notice of election to have the benefits of section 112 (b)(7) of the Revenue Act of 1938 including subparagraph (A) of that section. No part of the stocks and securities distributed to petitioner in the redemption of the preferred stock and cancellation of the common stock, as above detailed, had been acquired by Avalon subsequent to April 9, 1938, and no distributions were made by that corporation during December 1938. except those in liquidation above mentioned. On December 9, 1938, Imperial, 500 of the 800 shares in which were owned by petitioner as a result of their distribution to her in the above described liquidation of Avalon, formally adopted a plan of liquidation pursuant to section 112 (b)(7), supra. Distribution of its assets to its stockholders was made on December 10, 1938. On this date the corporation had no earnings or profits accumulated subsequent to February 28, 1913. In addition to stocks and securities then distributed in liquidation *225 to petitioner as owner of 5/8 of the corporate stock, there was distributed to and received by her $102,876.33 in cash. As a condition of her receipt of the distribution, petitioner assumed liability for and subsequently paid income taxes and interest thereon owing by the distributing corporation in a total of $26,733.40. Petitioner for 1938 reported a long-term capital gain of $102,876.33 as realized upon this liquidation and 50 per cent, or $51,438.17, as includable in taxable income. The parties stipulate, and we accordingly find, that the petitioner realized a long-term capital gain of $76,142.93 in this liquidation, of which $38,071.46 represented taxable income to petitioner. In the liquidations of both Avalon and Imperial the petitioner received, in exchange for her common stock in those companies, not only cash, stocks and securities, but also claims for dividends which had been declared upon certain of such distributed stocks payable to stockholders of record on dates prior to those upon which the distributions in liquidation of such stocks were made, but payable to such stockholders of record on dates subsequent to those upon which such distributions in liquidation were *226 made. Opinion The only issue submitted on these facts is the first issue stated above. It is the amount of the income tax liability of petitioner resulting from the liquidation, in December 1938 of Avalon, a personal holding company, in which petitioner was the sole stockholder, under the Revenue Act of 1938, section 112 (b)(7), supra. No question is raised that petitioner has not satisfied the quoted and pertinent requirements of that section, nor is it doubted that she is entitled to have her taxable gain computed under its provisions. The parties are also in agreement as to the application of those provisions. The dispute involves two questions, i.e., (1) the amount of the gain which is to be recognized and taxed as a dividend to petitioner under subsection (i) of the quoted statute, and (2) the amount of that gain which is to be recognized and taxed as a short-term or long-term capital gain under subsection (E)(ii) of the quoted statute. The controversy on the first point arises because of the difference in the computations of the respective parties of the earnings and profits of Avalon accumulated subsequent to March 1, 1913, and existing as of the date of liquidation *227 of that corporation in December 1938. Petitioner computed these earnings and profits as $55,327.14, while respondent determined them in the sum of $303,149.39. This difference results from the effect given by each party to the transactions under which Avalon received in 1935 and 1936 distributions in liquidation from Imperial in which it had a 5/8 stock interest. It is respondent's position that the increment in value of the stocks thus distributed, although not realized by Imperial prior to that distribution, should be considered as a realized gain when distributed to Avalon or, in any event, that its receipt by Avalon must be deemed to effect an increase in the surplus of that corporation to be considered thereafter as its realized gain or profit. The effect of the distribution in 1936 by Imperial has recently been before us in the case of Estate of H. H. Timken, 47 B.T.A. 494, affd., C.C.A., 6th Cir., Apr. 7 1944, involving the distribution received by the owner of the remaining 3/8 of the stock of Imperial. In that proceeding the same contention was made by respondent. Our holding was that the unrealized increment in the value of the distributed *228 stocks involved here did not constitute earnings or profits of Imperial and, consequently, upon distribution to its stockholders, did not represent dividends to them but a return of capital to be applied against the cost basis of the stock they held in the distributing corporation. In accordance with the decision in the above cited case, we sustain petitioner upon her computation as to the earnings and profits of Avalon. We hold that the distributions made in 1935 and 1936 by Imperial constituted dividends only to the extent of earnings and profits then realized by that corporation and that such earnings and profits may not be increased by unrealized appreciation in the value of assets distributed in kind, but that such distribution is to be charged against the cost basis of Avalon's stock in the distributing corporation. Estate of H. H. Timken, supra.Moreover, since this proceeding was not pending on September 20, 1940, but was instituted June 1, 1942, I.R.C., sec. 115 (1)[2] applies and requires the same result. Estate of John H. Wheeler, 1 T.C. 640 [Dec. 13,005.] No contention is made here that the distribution exceeded *229 such basis. Therefore Avalon may not be deemed to have realized a taxable gain in these distributions. *230 Under section 112 (b)(7)(E), supra, there was to be recognized and taxed as a capital gain to petitioner so much of the remainder of the gain (not taxable as a dividend) as was in excess of the amount by which the value of the assets which consisted of money received by petitioner with respect to each share of stock owned by her exceeded the ratable share of each such share of stock in the earnings and profits of Avalon. In determining this gain respondent contends that the redemption of the preferred stock and the cancellation of the common stock of Avalon was in reality "only one transaction". He urges that the redemption of the preferred stock and the cancellation of the common stock should not be separated and each treated as having been effected by a transfer of specific assets. He argues that, petitioner being the owner of both classes of stock, all of the assets must be considered as having been received in liquidation of all the stock without allocation to either class, and thus applied against the aggregate basis of petitioner for all the stock. The position of the petitioner is that the preferred stock was redeemed in a first and separate step in the complete liquidation *231 of Avalon; that this step was accomplished by the distribution of $300,000 in cash and 58,000 shares of common stock of Louisiana Land & Exploration Company; and that the common stock was then cancelled, as a second step in the liquidation, by a separate distribution of the remaining assets. This is the second point under the first issue. The question thus posed is solely one of fact. We are not immediately concerned with the general effect or result of the liquidation of Avalon. The answer to our question depends not upon effect but rather upon what was actually done. Thus the contention of the respondent fails to take into consideration the fact that the plan of liquidation calls specifically for the redemption of the preferred stock with the cash and shares actually distributed and that the two classes of stock were in fact separately redeemed and cancelled as was intended. It further overlooks the fact that petitioner, as owner of the preferred stock, was unquestionably entitled under the articles of incorporation of Avalon in the event of liquidation of that corporation to have her preferred stock first redeemed in cash before any distribution was made with respect to the common *232 stock. It is true that the transaction of liquidation was in a sense one aggregate. But that aggregate included two separate and distinct steps. And it does not necessarily follow that these two distinct and separate transactions going to make up that aggregate may not be treated separately and have their own individual tax significance. Weiss v. Stearn, 265 U.S. 242; United States v. Rodgers, 102 Fed. (2d) 335; Commissioner v. Harris, 92 Fed. (2d) 374; Daisy M. Ward, 29 B.T.A. 1251; and Georgia Savings Bank & Trust Co., Exec., 28 B.T.A. 1153 Petitioner, by reason of ownership of both classes of stock, does not forfeit the rights possessed under each class to have it separately redeemed by a specific payment or transfer of particular property. C. George Armstrong, 31 B.T.A. 418, and A. W. Leonard, 21 B.T.A. 549 We hold that the preferred stock of Avalon was and must be treated as redeemed by transfer to petitioner of $300,000 in cash and 58,000 shares of common *233 stock of the Louisiana Land & Exploration Company. The second issue involves the proper treatment of the dividend claims received by petitioner or her nominee, Avalon Trust, in the distributions in liquidation of Avalon and Imperial. These dividends, at the time of the adoption of the plans of liquidation of the respective companies, had already been declared and were paid to and received by petitioner or her nominee, the Avalon Trust, subsequent to the transfer of the stocks and rights thereunder and the dates upon which stockholdings of record would be entitled to such dividends. Respondent contends these dividend payments are taxable as dividends to petitioner. Petitioner argues that the claims for dividends, in the stipulated amount, are not so taxable. She insists they constitute an asset separate and distinct from the shares of stock and thus a return of capital to her. She seeks to allocate to these claims a proportionate amount of her total adjusted cost of her stock in Imperial. The amount which she thus allocated as capital upon her return, she has now increased slightly. We understand, however, that respondent is not contesting the amount of this recomputation, but that *234 he is merely taking issue upon the taxable character of the dividend claims. Consequently, the issue is whether these payments represent dividends received by petitioner or the liquidation of a capital asset. Respondent rests his position upon the authority of Eugenia R. Jemison, 28 B.T.A. 514. Subsequent to the decision in that case, we held in the case of Gladstone Co., Ltd., 35 B.T.A. 764, where the transfer of purchased stock was subsequent to the date of declaration of the dividend and prior to a date fixed for payment, that the purchaser acquired two separate assets, one the stock, and the other the claim for dividends, the latter being a separate right constituting a capital asset. In that case our decision in Eugenia R. Jemison, supra, was cited and distinguished upon the ground that there the resolution fixing the date for payment did not fix the date of record holding which entitled the stockholders to payment. We think that the present issue is controlled by our decision in Gladstone Co., Ltd., supra, and sustain petitioner on this issue. Revenue *235 Act of 1938, sections 111 and 115 (c); Regs. 101, art. 112 (b)(7)-4. Decision will be entered under Rule 50. Footnotes
1. Election as to Recognition of Gain in Certain Corporate Liquidations. - (A) General Rule. - In the case of property distributed in complete liquidation of a domestic corporation, if - (i) the liquidation is made in pursuance of a plan of liquidation adopted after the date of the enactment of this Act, whether the taxable year of the corporation began on, before, or after January 1, 1938; and (ii) the distribution is in complete cancellation or redemption of all the stock, and the transfer of all the property under the liquidation occurs within the month of December, 1938 - then in the case of each qualified electing shareholder (as defined in subparagraph (C)) gain upon the shares owned by him at the time of the adoption of the plan of liquidation shall be recognized only to the extent provided in subparagraph (E) * * *. (D) Making and Filing of Elections. - The written elections referred to in subparagraph (C) must be made and filed in such manner as to be not in contravention of regulations prescribed by the Commissioner with the approval of the Secretary. The filing must be within thirty days after the adoption of the plan of liquidation, and may be by the liquidating corporation or by the shareholder. (E) Noncorporate shareholders. - In the case of a qualified electing shareholder other than a corporation. (i) There shall be recognized, and taxed as a dividend, so much of the gain as is not in excess of his ratable share of the earnings and profits of the corporation accumulated after February 28, 1913, such earnings and profits to be determined as of December 31, 1938, but without diminution by reason of distributions made during the month of December, 1938; and (ii) There shall be recognized, and taxed as short-term or long-term capital gain, as the case may be, so much of the remainder of the gain as is not in excess of the amount by which the value of that portion of the assets received by him which consists of money, or of stock, or securities acquired by the corporation after April 9, 1938, exceeds his ratable share of such earnings and profits.↩
2. (1) Effect on Earnings and Profits of Gain or Loss and of Receipt of Tax-Free Distributions. - The gain or loss realized from the sale or other disposition (after February 28, 1913) of property by a corporation - (1) for the purpose of the computation of earnings and profits of the corporation, shall be determined, except as provided in paragraph (2), by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain, except that no regard shall be had to the value of the property as of March 1, 1913; but (2) for the purpose of the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain. Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made. Where in determining the adjusted basis used in computing such realized gain or loss the adjustment to the basis differs from the adjustment proper for the purpose of determining earnings or profits, then the latter adjustment shall be used in determining the increase or decrease above provided. For the purposes of this subsection, a loss with respect to which a deduction is disallowed under section 118. or a corresponding provision of a prior income-tax law, shall not be deemed to be recognized Where a corporation receives (after February 28, 1913) a distribution from a second corporation which (under the law applicable to the year in which the distribution was made) was not a taxable dividend to the shareholders of the second corporation, the amount of such distribution shall not increase the earnings and profits of the first corporation in the following cases: (1) No such increase shall be made in respect of the part of such distribution which (under such law) is directly applied in reduction of the basis of the stock in respect of which the distribution was made. (2) No such increase shall be made if (under such law) the distribution causes the basis of the stock in respect of which the distribution was made to be allocated between such stock and the property received.↩